Voorhees v. De Meyer.

GREENE GENERAL TERM, October, 1847.  *Harris, Watson, and Parker*, Justices.

VOORHEES and others *vs*. DE MEYER.

Where a vendor agreed to sell and convey to a purchaser " lots Nos. 9 and 11 in No. 20 in great lot 34, 187½ acres for $750 " he supposing, at the time, that lot No. 11 contained 143¼ acres—but in fact, owing to an error of the surveyor who subdivided great lot No. 34, in extending his survey beyond the north boundary of great lot No. 34, whereby he included with lot No. 11 of his subdivision 43½ acres of a gore lying north of that lot, lot No. 11 really contained but 100 acres, and the quantity of land actually embraced in lots 9 and 11 fell short of the quantity agreed to be conveyed 43½ acres; by reason of which error the vendor was unable to make a good title to the whole quantity of land; on a bill by the assignees of the vendor, for a specific performance; *Held* that it was a case of mutual mistake in relation to the quantity of land contained in the two lots; and a decree was made, directing a specific performance of the contract, by the vendor, so far as he was able to perform the same, and providing for an abatement from the purchase money on account of the deficiency in the quantity of the land.

Where a specified tract of land is sold for a sum in gross, the boundaries of the tract control the description of the quantity it contains; and neither party can have a remedy against the other for an excess or deficiency in the quantity; unless such excess or deficiency is so great as to furnish evidence of fraud, or misrepresentation.

But this rule does not apply to a case where the mistake is in the *boundaries* of the tract sold, and not in the quantity of acres it contains; nor where the deficiency is not in the thing described, but in the ability of the defendant to convey the thing described.

A party asking for a specific performance of a contract must show that there has been no default, on his part. And if the application for relief is made after a great lapse of time, unexplained by equitable circumstances, the bill will be dismissed. Yet where non-compliance with the terms of the contract does not go to its essence, relief will be granted, notwithstanding the laches of the party seeking to enforce performance.

Time is not generally deemed, in equity, to be of the essence of a contract; unless the parties have expressly so treated it, or it necessarily follows from the nature and circumstances of the contract.

The fact that the vendor has suffered the purchaser to remain in possession of the land, and has received payments from him, from time to time, on account of the contract, down to a short period previous to the filing of a bill by the purchaser, for a specific performance, is strong evidence that neither party intended that a failure to perform the contract, at the time specified, should forfeit the right of the party failing, to have a specific performance. *Per* HARRIS, P. J.

The vendor, in such a case, after having suffered the purchaser to remain in possession, making improvements upon the land, for many years since the time when he had a right to insist upon payment, and after having received, during that period, several payments from the purchaser upon the contract, will not be allowed, when called upon to perform, on his part, to insist upon a forfeiture on the ground that the contract had not been performed, in time, by the purchaser.

Nor will the circumstance that at the time of filing a bill by the purchaser, for a specific performance, the vendor is unable to make a title to the whole of the land sold, relieve him from a performance of his contract, so far as it can be performed, any more than it would have done at the time the purchase money became due; unless something has occurred since that time, by reason of the purchaser's delay, which has placed the vendor in a worse situation than he would have been in had he been called upon to perform his contract, at the time stipulated.

IN EQUITY.  Under the provisions of an act of the legislature, passed in 1790, certain commissioners appointed by that act surveyed and divided lot No. 20, in the Hardenburgh patent, into smaller lots, and marked their boundaries.  In 1811 or 1812, James Cockburn subdivided lot No. 34, one of the subdivisions of great lot No. 20, made by the commissioners in 1790, into 16 lots, and in the division of these lots among the owners, lots Nos. 9 and 11 were allotted to Christina De Meyer, the wife of the defendant.  According to Cockburn's survey, lot No. 9 contained $45\frac{1}{4}$ acres, and lot No. 11, $142\frac{1}{4}$ acres.

On the 30th of May, 1817, the defendant entered into a contract with one William Griffin, whereby he agreed to sell and convey to Griffin "*lots Nos. 9 and 11 in No. 20 in great lot No. 34, one hundred and eighty-seven acres and one half, for seven hundred and fifty dollars,* to be paid in five years from that date in equal annual payments, with the interest of the whole on each payment."  Griffin entered into possession of the lots, under the contract, and made payments from time to time until May, 1844, when a payment of $50 was made.  On the 19th of August, 1845, a computation was made, and

a balance of $349,84 was found due upon the contract for principal and interest. It was then proposed that the defendant should execute a deed to Griffin, and take a bond and mortgage upon the premises, to secure the balance due upon the contract. Accordingly a deed was prepared in which the premises were described as follows: "All that portion of lots Nos. 9 and 11 in subdivision No. 34 in great lot No. 20, in the Hardenburgh patent, now in the actual possession of the said William Griffin, and being *a portion* of the 187½ acres contracted to be sold to the said William Griffin on the 30th of May, 1817." Griffin refused to take the deed in this form, and insisted that it should be drawn so as to describe the lots as containing 187½ acres; stating that he had never had possession of 43½ acres of the land, but that it had for more than 20 years been held adversely by one Garrison; or, if the whole number of acres was not included in the deed, that the consideration of that part of the land, not deeded, at the rate of four dollars per acre, with interest, should be allowed upon the contract. The defendant declined executing the deed upon these terms, and on the day following, Griffin, being indebted to the plaintiffs to the amount of $584,88, assigned the contract to them, as security for their debt. The bill in this cause was filed for a specific performance of the contract, and it prayed that if it should appear that the defendant could not give a good title to the 43½ acres embraced in the contract, and in the adverse possession of Garrison, that then the defendant might be decreed to convey the residue; and that an abatement might be made from the purchase money, to such amount as ought to be allowed by reason of the failure of the title to the 43½ acres. The defendant, in his answer, insisted that he was only bound by his contract to give to Griffin or his assignees a title to lots Nos. 9 and 11, whatever number of acres they might actually contain; and also that if Griffin had suffered Garrison to hold adverse possession of a part of the lots until he acquired title by means of such possession, he could not call upon the defendant now to make him a title to the land thus held adversely. Witnesses were examined by both parties. The facts proved,

so far as they are material to the questions decided, will be found stated in the opinions delivered in the case. The cause was first heard by the Hon. Lewis H. Sandford, assistant vice chancellor of the first circuit, who made a decree for a specific performance of the contract, so far as the defendant was able to make a title to the premises described therein, and declaring that, as to the $43\frac{1}{2}$ acres, the defendant could not make a good title, and directing a reference to ascertain and report the amount due upon the contract, deducting therefrom the value of the $43\frac{1}{2}$ acres, at the rate of four dollars per acre, to be allowed as of the day of the date of the contract. The following opinion was delivered by the assistant vice chancellor on that occasion.

THE ASSISTANT VICE CHANCELLOR. The objection that William Griffin ought to have been a party to the suit, was made for the first time at the hearing. It therefore came too late, if a perfect decree can be made between the present parties; and if Griffin be an indispensable party to a decree between them, the court will direct the cause to stand over so that he may be made a defendant. It is clear that he may be made a party with propriety ; and if the complainants prove to be entitled to relief, the decree may provide for bringing Griffin into the suit. On the merits of the case, it seems to me to be an important question whether the subdivision 11 in lot 34, did or did not include the gore, as it is called, lying northerly of Griffin's possession. The north line of the subdivision is the north line of lot 34, and cannot extend beyond the latter. Where then was the north line of lot 34? As I understand the private act of 1790, under which great lot No. 20 was run out and subdivided, it was the duty of the commissioners to mark the division lines. If so, and they performed that duty, there must have been a line designated and marked through the forest in 1790, or soon after, as and for the north line of this subdivision 34. When Mr. Cockburn, the witness, proceeded in 1811 or 1812, to subdivide lot 34 into smaller lots, he found two lines marked on its north side, neither of which cor-

Voorhees *v.* De Meyer.

responded with the required distance from the south line as laid down in the commissioner's survey and map.   The most south-erly of the two lines found by Cockburn is the south line of the gore, and corresponds with the north line of Griffin's possession. But this falls ten chains short of the distance on the commis-sioner's map.   The other marked line was two and a half chains beyond that distance.   He found no line at the proper distance, nor any marked corner at the northeast corner ; but at the northwest corner, at a point one or two chains from where he came out in running the north line at the proper dis-tance, he found the corner as marked by the commissioners. It does not appear that this corner corresponded with the northerly marked line, and it could not have corresponded with the other.   The southerly line which Mr. Cockburn found must have been there before the Tappens run their line as mentioned by the witness Van Valkenburgh ; for that was about the time Griffin entered into possession.   The Tappens must, therefore, have run out the line which Cockburn saw in 1811 or 1812, and marked more trees to designate it.   Now Mr. Cockburn, as a surveyor, residing in that region of country, must have known at that time whether the southerly line which he found was an old line or not ; whether it had been marked twenty years, or only two or three years before.   And his silence as to the character of both lines in this respect, is singular.   Again, he was a party interested in maintaining the line as far north as possible, yet he did not adopt the northerly line which he found marked ; and this shows clearly that he did not, in 1811, deem that to have been the line marked by the commissioners.   Garrison took possession of the gore from Brooks in 1820, and he testifies that there was then a line of marked trees on the south line of the gore, which had appa-rently been made some years before, and the bark of the trees had partly grown over the marks on them.   This, from the description of the witness, must have been the same marked line that Cockburn saw eight or nine years before ; and the growth of the bark over the marks much strengthens the pre-sumption that it was the line originally run by the commis-

sioners. It certainly makes it so very doubtful whether lot 34 as laid out ever actually included the gore, that this court will not compel a purchaser to take the title to it from one whose claim is limited to the north boundary of that lot. The line marked by the commissioners, must of course control the extent of the lot, and it cannot be carried beyond that line by the courses and distances contained on their map. (*Van Wyck* v. *Johnson*, 18 *Wend.* 157.)

It is possible that some light may be thrown upon the point by extending a survey across subdivision 35. Still, if the north line of 35 shall be found to correspond with that laid down by the commissioners on their map, and by some error of theirs, such as counting 72 chains when they had run only 62, they marked and established by monuments the north line of subdivision 34, ten chains south of where it should have been, there is no remedy for it, and No. 34 must continue to be 62 chains wide while 35 will retain its enhanced width of 82 chains. The locality of this line was distinctly in issue, and I must presume that the parties exhausted their testimony in regard to it. If any witness could have aided the defendants it was Mr. Cockburn, whose testimony I have already examined. I feel impelled, therefore, to decide upon the locality, as between these parties ; and my opinion is clear that the south line of the gore was the original north line of lot No. 34 as actually marked and designated by the commissioners. The lot 11, as owned by the defendant and his wife, is necessarily bounded upon this line, and the defendant is not able to give to the complainants a title to the gore in question.

This being the result, it is next contended, on the part of the defendant, that the contract was for the sale of lot 11, whatever its contents might be ; and that the expression " 187½ acres," was mere description. In considering this point it must be observed that this is an executory contract between the parties. The bill charges that previous to the bargain, the defendant exhibited to Griffin a map showing the lots 9 and 11, and that as they were there laid down, they contained 187½ acres. This is denied by the answer, and it is not proved.

Voorhees *v.* De Meyer.

But what are we to infer from the contract itself, with the surveys and descriptions? The defendant contracted to sell to Griffin "lot number nine and eleven in No. 20 in great lot No. 34, one hundred eighty-seven acres and one half, for seven hundred and fifty dollars." This is a contract for the two lots for a gross sum, or *per aversionem*, as it is called in the civil law. But what was the intention of the parties? Was there a mutual mistake, or was there a misrepresentation? Of the latter I find no proof. But I think there is sufficient evidence of a mistake.

If Griffin, after ascertaining the defendant's terms, had gone to examine the land, he would have found lots 9 and 11 as laid out by Cockburn in 1811 or 1812, containing 187½ acres. He would not have been led to examine the lines of lot 34; for the description which he had received designated lots 9 and 11 as subdivisions of lot 20, instead of 34. Now I am to presume that Griffin either did examine before contracting, or satisfied himself from the statements of others, who as he supposed had examined or otherwise knew the two lots. So the defendant undoubtedly supposed these two lots ran across what is called the gore, and embraced the 187½ acres. If he had ever visited them, he would have found them so marked on the ground. If he took his information from Cockburn's subdivision of lot 34, he found the two lots laid out by metes sufficient to contain 187½ acres. His whole idea of the lots, and his information concerning them, necessarily rested on Cockburn's, because they originated in his survey and subdivision. That he understood and believed the two lots to contain the full quantity is further proved by his subsequent assertion, from time to time, that lot 11 extended across the gore.

The case then, upon the contract itself and the several surveys, is this: The defendant and Griffin, dealing in respect of lot 11, proceeded upon Cockburn's survey and location of the lot, by which it contained 142¼ acres. The one intended to sell the lot as laid out and marked by Cockburn, and the other supposed that he was buying the lot so marked; which truly contained the quantity of 142¼ acres. On completing the

contract it turns out that Cockburn, in running this lot 11, extended it so much farther north than he should have done, as to include 43½ acres on the lot 35, and the defendant never had any right or claim to those 43½ acres.

This is a plain instance of mutual mistake. The lot 11, for which Griffin contracted, was the one laid out by Cockburn. The lot 11 which the defendant is able to convey, is the same lot, as Cockburn should have laid it out, bounded on the north by the lot 35. The deficiency is not in the subject matter as described in the contract; for Cockburn's lot 11, as he marked it, holds good as to quantity. The difficulty is in giving title to that subject matter. This frees the case from the bearing of the authorities cited by the defendant to show that when a definite lot is conveyed, stating the number of acres, the latter is merely descriptive, and the boundaries of the former must govern, whether they contain a greater or a less quantity of land.

The complainants, as assignees of the contract, are entitled to a decree for its performance, so far as the defendant can make a title. And for the 43½ acres to which he cannot convey a good title, there must be a rateable deduction from the price. This deduction should be made at the outset, and interest computed upon the balance, and the payments applied accordingly. To obviate the delay of making Griffin a party, the complainants may file his assent under seal duly acknowledged, to be bound by the decree. This consent should be recited in the decree and enrolled with it. The decree may also declare that the title of the defendant and his wife to the land in the gore, is not to be affected by it, for any purpose other than the performance of this agreement. If the parties can agree upon the computation, a reference will be unnecessary. As to the costs, there has been a mistake, common to all the parties, and neither of them appears to have arrived at a correct view of the facts till since the litigation commenced. I think it is just to give no costs to either against the other, up to the entry of the decree. If Griffin declines to execute the

Voorhees v. De Meyer.

consent, the complainants may make him a party by a supplemental bill.

The defendant applied for a rehearing, to the honorable Seward Barculo, then vice chancellor of the second circuit, who granted the application. The cause was subsequently reheard before Judge Barculo, who made a decree reversing the decree of the assistant vice chancellor, and directing the defendant to execute a conveyance of lots Nos. 9 and 11, upon receiving the balance due on the contract, without any allowance for the 43½ acres. Upon making such decree he delivered the following opinion :

S. Barculo, V. C. Were this an original hearing of the cause, I should be strongly inclined to dismiss the complainant's bill. In so doing I should be applying a settled principle of this court, which refuses its aid to those who have been grossly negligent in performing their contracts, and leaves them to their remedy at law. This principle is thus stated by Judge Story, (*Com. on Equity, sec.* 771 :) "In general, it may be stated, that to entitle a party to specific performance he must show that he has been in no default in not having performed the agreement, and that he has taken all proper steps towards the performance on his part. If he has been guilty of gross laches, or if he applies for relief after a long lapse of time, unexplained by equitable circumstances, his bill will be dismissed ; for courts of equity do not, any more than courts of law, administer relief to the gross negligence of suitors." Again, in section 776, he says : "But then, in such cases, it should be clear that the remedies are mutual ; that there has been no change of circumstances affecting the character or justice of the contract ; that compensation for the delay can be fully and beneficially given ; that he who asks a specific performance is in a condition to perform his own part of the contract ; and that he has shown himself ready, desirous, prompt, and eager to perform the contract." Assuming that the complainants, as assignees, have succeeded to all the rights and equities of

Voorhees *v.* De Meyer.

Griffin, and no one can pretend that they are entitled to more, it would be impossible to say that they have taken all proper steps towards the performance on their part; that there has been no change of circumstances affecting the character of the contract; or that they have shown themselves desirous, prompt, and eager to perform the contract. On the other hand, they have been guilty of the gross laches of waiting twenty-eight years after the execution of the contract, and twenty-three years after the time fixed for its full performance. But as a decree has already been entered which has been partly carried into effect, the bill cannot be dismissed without perhaps some prejudice to the parties. Independent of the question of time, I think also the merits are with the defendants. The lots were purchased, not by the acre, but for a gross sum; in which respect the bill seems not to be sustained by the evidence. The contract speaks of lots Nos. 9 and 11, in great lot No. 34, 187½ acres, for seven hundred and fifty dollars. It is unnecessary to cite authorities to show that the lots control the description of the number of acres, and that neither party has a remedy against the other for an excess or deficiency in the quantity, unless it is sufficiently great to be evidence of fraud or misrepresentation. If the complainants obtain lots Nos. 9 and 11, they will have all that Griffin contracted for, all that he has been in possession of for upwards of twenty years without complaint, and all that the complainants are entitled to have.

The defendant must be decreed to execute a deed conveying to the complainants lots Nos. 9 and 11, on receiving the balance of the purchase moneys. In which case neither party is to have costs as against the other. If the complainants fail to pay such balance within thirty days after the deed is executed and tendered to them, their bill must be dismissed with costs.

The plaintiff appealed from this decree, and the cause having been noticed for hearing upon the appeal, at the last Ulster special term, it was ordered, by the justice holding that term, to be heard at a general term; and the same was accordingly

Voorhees v. De Meyer.

brought to a hearing at the October general term, held in the county of Greene.

*J. O. Linderman,* for the plaintiff.

*J. Van Buren & M. Schoonmaker,* for the defendant.

*By the Court,* HARRIS, P. J.   I concur entirely with the assistant vice chancellor in the view he has taken of the facts in this case.   After a careful examination of all the proofs before the court, I am satisfied that no part of the gore spoken of by the witnesses was embraced within the boundaries of lot No. 34, as located by the commissioners in 1790; and that Cockburn, in the survey and subdivision of the lot made by him in 1811, or 1812, extended his survey beyond the north boundary of the lot, so as to include within lot No. 11 of his subdivision, 43½ acres of the gore.   If this be so, it follows that when the defendant agreed to sell to Griffin the lots in question, lot No. 11 really contained but one hundred acres; although, in consequence of the error made by Cockburn in running beyond the north line of great lot No. 34, he had been led to believe that it contained 143½ acres.   Under this belief he represented the two lots as containing 187½ acres.   It was so expressed in the contract.   The parties to the contract were both mistaken in relation to the quantity of land contained in the two lots.   Both, undoubtedly, relied upon Cockburn's survey, which showed that the lots contained the number of acres specified in the contract.   The defendant relying upon that survey, and supposing he had a right to sell all the land embraced within the boundaries of lot No. 11, as located by Cockburn, agreed to sell and convey the same to Griffin, when in fact he had no right whatever to 43½ acres of the land. Griffin, relying upon the defendant's representations as to the quantity of land included in the lots, agreed to pay for the lots a price equal to four dollars per acre for the whole quantity the lots were represented to contain.

It is true the lots were purchased by Griffin for a gross sum,

Voorhees *v.* De Meyer.

and not by the acre; and I agree with the vice chancellor who made the last decree, in the rule laid down by him, that where a specified tract of land is sold for a sum in gross, the boundaries of the tract control the description of the quantity it contains; and that neither party can have a remedy against the other for an excess or deficiency in the quantity, unless such excess or deficiency is so great as to furnish evidence of fraud or misrepresentation. But I cannot agree with that learned judge in the application of that rule to the case under consideration. The mistake here is in the *boundaries* of lot No. 11, and not in the quantity of acres it contains. If the defendant, as he supposed when he executed the agreement to sell, could have made a title to the whole lot, as surveyed by Cockburn, there would have been no deficiency in the number of acres. There was no other lot No. 11 than that surveyed and laid out by Cockburn. When the defendant agreed to sell to Griffin lot No. 11, he must therefore have intended the lot as described by Cockburn. There is no deficiency in the number of acres in the lot sold; the difficulty is in the defendant's being unable to make a title to the whole of that lot. If there had been a less number of acres in lot No. 9, the whole of which is conceded to have been in great lot No. 34, than the parties at the time of the contract supposed, then the rule stated by the vice chancellor would have been applicable. The deficiency then would have been in the thing described. But in reference to lot No. 11, the deficiency is not in the thing described, but in the ability of the defendant to convey the thing described. I think, therefore, the decision of the assistant vice chancellor was correct, and should be sustained, unless, as the vice chancellor supposes, Griffin and the plaintiff, who represent him, are chargeable with such gross laches as should deprive them of the relief to which they might otherwise be entitled.

And here, again, while I fully assent to the doctrine upon which the learned vice chancellor relies, I am constrained to dissent from its application to the case before the court. It is true that a party asking for a specific performance, must show that there has been no default on his part; and if the applica-

Voorhees *v.* De Meyer.

tion for relief is made after a long lapse of time, unexplained by equitable circumstances, the bill will be dismissed; but the learned writer by whom this rule is laid down, adds, in the same paragraph, that the doctrine is to be taken with some qualifications; and that where non-compliance with the terms of the contract does not go to its essence, relief will be granted, notwithstanding the laches of the party seeking performance. And the same writer adds, in the section from which the vice chancellor has quoted, that "time is not generally deemed, in equity, to be the essence of the contract, unless the parties have expressly so treated it, or it necessarily follows from the nature and circumstances of the contract." In this case there is nothing in the nature or circumstances of the contract itself, nor in the manner in which the time of performance has been treated by the parties themselves, which shows an intention to make time essential in the performance of the contract. On the contrary, the fact that the defendant suffered Griffin to remain in possession of the land, and received payments from him from time to time, on account of the contract, down to a short period before the filing of the bill in this cause, is strong evidence that neither party intended that a failure to perform the contract, according to its terms, at the time specified, should forfeit the right of the party failing, to have a specific performance. (*Harris* v. *Troup*, 8 *Paige*, 423.) Suppose there had been no question in relation to the quantity of the land sold, and that this bill had been filed merely to obtain a conveyance from the defendant upon payment of the balance due on the contract, would any court of equity, under the circumstances which this case presents, withhold a decree for a specific performance? Is there any principle of equity which would allow the defendant, after having suffered the purchaser to remain in possession, making improvements upon the land, for more than twenty years since the time when he had a right to insist upon payment, and after having received during that whole period payments from the purchaser, on account of the contract, now, when he is asked to perform on his part, to insist upon a forfeiture because the contract had not been performed in time by

Voorhees *v.* De Meyer.

the purchaser? And if not, is there any thing in the fact that the defendant is unable to make a title to the whole of the land sold, which should relieve him from a performance of his contract now, more than at the time the purchase money became due? I apprehend not; unless indeed, something has occurred, as the vice chancellor seems to suppose, by reason of the purchaser's delay, which has placed the defendant in a worse situation than he would have been in if he had been called upon to perform his contract at the time stipulated. It would, I think, have been a good defence to have shown that at the time stipulated for the performance of the contract, the defendant could have made a title to all the land described in the contract, and that in consequence of the negligence of the purchaser he was now unable to make such title. This would have presented such a change of circumstances affecting the justice of the contract, as should have excused the defendant from performance. But no such fact appears in this case. On the contrary, I think the evidence warrants the conclusion that the defendant never had it in his power to give a valid title to the 43½ acres in question; and if so, no change of circumstances has occurred which renders it inequitable to require him to perform his contract, so far as it can be performed, and to make an abatement from the purchase money for the deficiency in the quantity of land he is able to convey.

The result of this view of the questions involved in the case is, that the decree of the assistant vice chancellor was right, and should be established. The decree appealed from must, therefore, be reversed. I think the defendant should be charged also with the costs, since the entering of the first decree.