OTIS T. RICHMOND, and others, Respondents, *v.* LUCIUS FOOTE, Appellant.

(GENERAL TERM, THIRD DEPARTMENT, OCTOBER, 1870.)

Part payment of the purchase-money, with possession, and other acts of the vendee, under an unwritten agreement for the purchase of land, which render it impossible to replace him in his former position, will take such agreement out of the statute of frauds.

And where such an agreement is proved, with undisturbed possession of which the vendor has knowledge, and payment under the agreement of part of the purchase-money with improvement of the land, and there is no other contract to which such acts can be referred, it will be inferred that they were under the agreement proved.

Delay in making payments upon a contract for the purchase of land after the time required, will not work a forfeiture of the vendee's rights to specific performance, where partial payments have been subsequently received, and negotiations entered into to complete the purchase, and no notice of the vendor's intent to insist upon forfeiture for non-payment of arrears has been given.

The vendee's title under an unwritten contract for purchase of land, taken out of the statute of frauds by his part performance, is subject to sale for payment of his debts, on the application of his personal representatives under 2 R. S., 111, § 66.

A petition of an executor, &c., under 2 R. S., 100, §§ 1, 2, for authority to sell, &c., real estate, which states that "the amount of personal property which has come to his hands as appraised by the inventory is, &c.," sufficiently states the amount of personal property which actually came into his hands. And a statement of the amount received, and that it is still in his hands unpaid and unapplied, sufficiently shows "the application" of the moneys received.

And it is enough, if the necessary facts appear from the papers on which the surrogate's order is founded ; accordingly, where three petitions were made the basis of the proceedings,—*Held*, that they should be taken together as part of the same proceeding.

The petition may refer to a former petition, filed in the same matter, for a statement of the facts necessary under the statute.

So a guardian for the infants need not be appointed upon a final applica-
tion on which the order for sale, &c., is made, where a guardian has
already been appointed on a former application in the same matter.

It is too late to object, in an action to recover possession of property sold
under the surrogate's order in such proceedings, that the penalty of the
bond, given under the statute (§ 67) for payment of the balance due on
the contract of sale, to which such order has reference, is less than the
actual balance due on such contract.

It is sufficient if the petition is verified before a justice of the peace.

It is also proper, that the vendee's interest in the land should be sold under
the proceedings; it is not essential that the contract merely be assigned.

In an action to recover possession of property held under a sale by virtue
of such proceedings, and questioning the validity thereof, the heirs-at-
law of the deceased owners of the contract are not necessary parties; nor
can such an objection avail without answer or demurrer upon that ground.

THIS is an appeal from a judgment of Special Term before
Justice POTTER, adjudging the specific performance by the
defendant of a contract for the sale of certain lands in
Moriah, Essex county, made by John C. Hammond, under
whom the defendant claims, as vendor, to Albert Hubbard,
under whom the plaintiffs claim, as vendees.

In the year 1856, John C. Hammond was the owner of
the premises in question, the defendant being in the actual
occupancy and management of the same for Hammond, and
being beneficially interested in the same. In that year Albert
Hubbard made an oral agreement with Hammond, which
was negotiated through the defendant for the purchase of
the premises at the price of $300. No time of payment
appears to have been fixed.

Hubbard immediately went into possession, fenced the lot,
cultivated it, dug stumps, and otherwise improved the land,
and occupied it till his death in 1859. Hubbard paid Ham-
mond on account of the purchase-money fifty dollars, Octo-
ber 20th, 1856, and $100, June 13th, 1857, for which pay-
ments receipts were given by Hammond.

The land was surveyed in 1856, or in the spring of 1857,
by one Arnold, under the direction of the defendant, he
and Hubbard both being present. In May, 1857, a deed
from Hammond to Hubbard, describing the premises accord-

ing to Arnold's survey, was drawn by direction of defendant and left with Hammond for execution. It was never executed, but was found among Hammond's papers after his death.

Hammond, some weeks after receipt of the draft deed, declared to defendant that he would execute the deed on payment by Hubbard, and defendant afterward saw Hubbard, who made excuses for his delay in payment.

Hubbard died intestate 17th August, 1859, leaving a widow and three minor children. Letters of administration on his estate were issued to his widow and one McKenzie. Hammond died intestate 1st June, 1858. His title to the premises in question became vested in Charles F. Hammond, his brother. Hubbard's widow and children remained in possession of the premises down to the surrogate's sale hereafter named, excepting an attempt of the defendant, in 1860, to cultivate the land, which was successfully resisted by the widow and heirs of Hubbard.

In the fall of 1859 and the following winter or spring, the widow of Hubbard, in two interviews with C. F. Hammond, who then held the title, endeavored to make an arrangement with him to pay up the contract and take a deed. Hammond at one time said the contract was forfeited, at another that Hubbard's creditors would claim what money he had paid on the contract, and again that the defendant claimed the lot, but had no right to it.

In June, 1860, Hubbard's administrators filed with the surrogate of Essex county a petition for the sale of the intestate's real estate for the payment of his debts; and proceedings were thereupon had, under which the premises in question were sold to the plaintiff Richmond on the 24th of June, 1862, who gave a bond to the administrators in the penalty of $400, conditioned for the payment of $175; the actual balance due upon the contract being something over $200. The defendant claims the proceedings to be invalid to pass title to Richmond.

Richmond took the title in his own name, but for the benefit of the plaintiffs as partners, and paid for the same

with partnership funds. In May, 1864, he conveyed to his co-plaintiffs, Foote and Dupuy, an undivided two-thirds of the premises.

From the time of the deed to Richmond the plaintiffs took and held possession.

Plaintiffs, in August, 1862, demanded a conveyance from C. F. Hammond, who then held the title, offering to pay the balance due on the contract. Hammond declined to convey, admitting the plaintiff's equitable right, but alleging that defendant had forbidden him to convey. Plaintiffs then forbade his conveying to defendant.

C. F. Hammond conveyed the premises, with other real estate, to the defendant on the 25th of November, 1862, receiving back from him a bond of indemnity against all claims on contracts to convey, "oral or written," and agreeing to fulfill all such contracts outstanding or in force against C. F. Hammond, John C. Hammond or Penfield, and to save them harmless, defend all suits on such contracts, &c.

This conveyance from Hammond to defendant was in pursuance of the original understanding between defendant and John C. Hammond, and on payment of the balance of an account, stated by Hammond, with "the L. A. Foot Cedar Point farm and wharf," in which that property was charged with its original cost and subsequent disbursements and interest, and credited with the moneys received from proceeds of parts sold, and those paid to the Hammonds by defendant. Among the credits to the property in this account were the two sums of $50 and $100, paid by Hubbard to Hammond, as above stated, under the respective dates of 20th of October, 1850, and 13th of June, 1857.

On the 3d of June, 1864, plaintiffs, by F. W. Tobey, made a tender to the defendant of the balance due on the contract, with draft of a deed of the premises for execution, and demanded a conveyance of the premises. Defendant refused to convey, making no objection to the sufficiency of the tender or the form of the deed.

And the plaintiff Richmond had at least once before made a like offer and demand.

No demand was ever made by either of the Hammonds or defendant on Hubbard, his widow or heirs, or the plaintiffs, or either of them, for payment of the balance due on the contract, nor were they ever put in default in relation to such payments by demand or notice from the Hammonds or defendants, or either of them.

The plaintiffs had judgment for a conveyance of the premises on payment of the balance due on the contract, and for costs against the defendant.

The justice made several findings of facts, to which exceptions were taken. Various objections were taken to evidence, the admissions of evidence; and also motions were made to strike out evidence, and overruled, and exceptions taken to the decisions of the justice. A motion for a nonsuit was denied and an exception taken.

Judgment that the defendant convey was given, with costs, and the defendant filed exceptions and appealed.

*A. C. Hand,* for the appellant.

*Robert S. Hale,* for the respondents.

Present—MILLER, P. J., and PARKER, J.

MILLER, P. J. This action is brought to compel the spe cific performance of an alleged contract for the sale of a small tract of land situated in the county of Essex in this State; and the question to be determined is, whether a lawful agreement was made and carried into effect, in part, between John C. Hammond, the original owner of the premises, as vendor, and Albert Hubbard, deceased, under whom the plaintiff claims. It is contended that the contract was within the statute of frauds, and therefore void. It was not in writing, as required by the statute (2 R. S., 135, § 8); and, being a parol agreement, can only be enforced, and a specific

Richmond *v.* Foote.

performance decreed, upon the ground that there was a part performance, which takes it out of the statute. (2 R. S., 135, § 10.) Upon the trial, there was evidence which tended to establish, and the judge at Special Term found, that in the year 1856, Hubbard made a parol contract with Hammond for the purchase of the premises for the sum of $300, payable on demand, by which Hubbard was to build and keep in repair all partition fences, and, upon full payment of the amount, a warranty deed of the premises was to be executed; that Hubbard, with the knowledge of Hammond and the defendant (who at the time was the agent of Hammond), entered into the possession and cultivation of the premises, and so continued until the time of his death, which occurred in 1859.

He also finds and the testimony shows, that on the 20th of October, 1856, Hubbard paid fifty dollars to Hammond, for which he took a written receipt, which provided that it was " to apply on contract for the payment of land, and afterward on the 13th day of June, 1857, Hubbard paid the sum of $100, for which a receipt was also given to apply in payment toward land." These findings, I think, are abundantly sustained by the evidence. It is perhaps true that the payment of a part of the purchase-money, of itself, was not enough to take the case out of the statute of frauds. (Fry, 403; Wil. Eq. Juris., 184; 2 Story, Jur., 1; *Rhodes* v. *Rhodes*, 3 Sand. Ch. R., 279.) But payment made within a reasonable time, in connection with possession under a parol agreement, and accompanied by other acts, which cannot be recalled, so as to place the party in the same situation he was in before, will take a parol agreement out of the statute of frauds. (*Lowry* v. *Tew*, 3 Barb. Ch. R., 413.) It is necessary, however, in order to take a case out of the statute of frauds upon the ground of part performance of a contract, that the existence of the agreement should be made out by clear and satisfactory proof, and that the act of performance is of the identical contract. (*Parkhurst* v. *Van Cortland*, 14 Johns., 15; *Philips* v. *Thompson*, 1 Johns. Ch., 131, 149;

Fry, 387; Wil. Eq. Jur., 286.) It is claimed by the defend-
ant's counsel, that the possession taken was not in pursuance
of the parol contract proved, as there was no agreement to
that effect. By the agreement proved Hubbard was to fence
the land, which was an act of possession of itself, and which
was followed up by improvements and an actual occupancy
until Hubbard's death in 1869. The evidence shows that the
defendant, who acted as Hammond's agent, had knowledge
of the possession by Hubbard, and made no objection on his
behalf; that he had a deed prepared for Hammond to execute,
in May, 1857; that he saw Hammond and asked him if
Hubbard had got the deed. Hammond said he had not paid;
asked if Hubbard was in possession; was told that he was,
and he said he ought not to occupy it unless he paid. Soon
after this, as I understand, in June, 1857, Hubbard paid $100.
With full knowledge of the fact, Hammond allowed him to
continue in possession until he died, in June, 1858. Ham-
mond knew that Hubbard was in possession under the con-
tract, and both parties clearly understood that the possession
was taken and the money paid in part performance of this
identical parol agreement, for the purchase of the lot. Ham-
mond's brother, who, after Hammond's death, held the title,
allowed   Hubbard to remain until   the latter's death.
The widow then continued in possession after her husband's
death unmolested, except an entry made by the defendant in
1860, which was successfully resisted, and not of such a cha-
racter as was tantamount to a positive act of re-entry, or a
recovery in an action of ejectment. Both parties acquiesced
in Hubbard's possession. It was not forbidden, and no action
was brought to recover damages, on the premises; and as there
was no other contract, the inference is irresistible, that the
possession was taken and held under the parol agreement.

These acts were unequivocal and significant and resulting
from the agreement. Hubbard or his representatives could
not recover back the money paid, or for his improvements.
He or they will lose all, unless a specific performance is
decreed, and will suffer an injury amounting to a fraud by a

Richmond *v.* Foote.

refusal to execute the agreement. Under the circumstances Hubbard or his representatives could not be placed in the position they occupied before part performance. (3 Barb. Ch., 413 ; 28 How., 370 ; 44 Barb., 138.)

It is urged that the contract is forfeited by lapse of time. Although there has been some delay in making the payments, it was acquiesced in by Hammond during his life, and since his death the brother of Hammond, and the widow of the deceased entered into negotiations to complete the purchase. Time was not originally the essence of the contract, and where such is the case, it may be waived by the acts of the parties. No time of payment was specified in the agreement. A forfeiture may be waived by partial payments by the vendee after the time prescribed, and the vendor cannot then stop suddenly short, and insist upon a forfeiture for the non-payment of arrears remaining unpaid, without any previous notice of his intention to do so if the arrears are not paid. (*Harris* v. *Troup*, 8 Pai., 423 ; *Voorhies* v. *De Meyer*, 2 Barb., 37.) Taking all the facts and circumstances into consideration, it appears that there was a recognition of the contract and an acquiescence in it. It was allowed to rest undisturbed without any action by either party, or notice of an intended forfeiture ; and I am not prepared to say that there was such a want of promptness in asserting the rights of the deceased, as precludes a decree for a specific performance. The objection that too long a period of time has elapsed, is therefore no obstacle to the plaintiff's claim in this action.

I think that the interest of Hubbard under the contract was the subject of a legal sale under the statute. (2 R. S. 111, § 66.) The statute cited provides, that " if the deceased at the time of his death was possessed of a contract for the purchase of land," &c., his interest may be sold. This includes all contracts which can be lawfully enforced whether oral or in writing, and whether the estate be a legal or an equitable one. The statute is of a remedial character, broad and comprehensive in its terms, and embraces every interest in land to which a party may be entitled by virtue of any

Richmond *v.* Foote.

contract, for the purchase thereof, at the time of his decease. Nor is there any force, in my opinion, in the suggestion, that there is no power to sell under a contract when the payments have become due and unpaid (and especially if they become due in the lifetime of the deceased) except where the deceased was assignee of a contract, and that the provisions of sections 40, 41, 42 of the act of 1837 are confined to the case of a deceased assignee. (S. L. of 1837, 531, 532; 2 R. S., 111, §§ 66 to 68.) This would be too narrow and restricted a construction of the law, and I think was not intended.

Various objections are made to the validity of the sale and the proceedings before the surrogate. The defendant was a stranger to the proceedings, he makes no claim under Hubbard or his heirs, and if the proceedings can be questioned collaterally we can only inquire as to those objections which relate to the jurisdiction of the surrogate. (*Sheldon* v. *Wright*, 1 Seld., 497, 511; *Stanton* v. *Ellis*, 2 Kern., 577; *Sibley* v. *Waffle*, 16 N. Y., 180, 185; *Ackley* v. *Dygert*, 33 Barb., 176, 191; *Bloom* v. *Burdick*, 1 Hill, 130.)

The counsel for the defendant insists that the proceedings of the surrogate were improperly received in evidence, and were void on several grounds. 1st. That the first petition to sell was defective in not stating the amount of personal property which had come to the hands of the applicants, and only what had been *appraised;* nor the *application* thereof, nor the debts outstanding against the intestate. There were three petitions in all which related to the sale, the last two being intended to supply defects real or supposed, which existed in the first one. The first one states that the amount of personal property which has come to their hands as *appraised* as by inventory is, &c. This is, clearly, enough. What has been *appraised* includes what has come to their hands, and is a substantial statement thereof. The statement that they have received a certain sum in money, which is in their hands, and yet unapplied in the first petition, shows what has been paid and what remains, and, therefore, the *application* of all the moneys received.

Richmond v. Foote.

It was not necessary that the whole should have been applied. (S. L. 1837, 531, § 41.)    The amount of the debts is stated in gross in the first petition; and if this is a defect it is supplied by a statement of the debts in detail in the second. It is enough that they appear in the papers upon which the order of sale was made.  The three petitions may be taken together as a part of the same proceeding.  It is merely a matter of practice, and although it would be more formal if the first one contained all that was necessary, it is not a fatal objection to the proceeding that defective statements are supplied.

2d. It is said that the third petition is defective, and gave no jurisdiction; it recites the previous proceedings and states, that through inadvertence the lot of land in controversy was omitted and left out, and asks for the usual order for a sale, and refers to the first petition for authority to mortgage, lease or sell, &c., and to the orders made thereon.  I think it was sufficient to refer to the former petition, and this made it perfect, and embodied all the facts essential to confer jurisdiction.   The two petitions together showed the debts, the amount of the property on hand, all the real estate and every other requisite to make out a case for a sale, and there was no such change in the nature of the case or the facts between June, 1860 and August, 1861, as to authorize the conclusion that the last petition in connection with the others did not make out a case.  The blending of the two together would at most be an irregularity which would not affect the jurisdiction of the officer, and, if at all objectionable, the objection would more properly be presented, on the hearing or upon the direct application to set aside the proceedings for that reason. It was not a jurisdictional defect in any sense which can be successfully assailed in a collateral proceeding.

3d. It is said that a guardian for the infant should have been appointed.   The answer to this position is, that a guardian was originally appointed, and if the proceedings are to be taken as a whole, which I think is proper, then the original guardian was sufficient.

4th. It is also urged that the bond was not valid. This objection comes too late, and cannot be available here. The bond was in the penalty of $400, and recited that the amount unpaid on the contract was $175. This recital, even if defective, must control, and I think in form it was correct.

5th. It is objected further, that the petitions were improperly verified before a justice of the peace by one of the petitioners. The statute does not name an officer before whom the petition must be verified. (2 R. S., 100, § 2.) It would, therefore, appear to be sufficient, that it was sworn to before an officer authorized to administer oaths.

6th. It is also urged, that the land should not have been sold, but the contract assigned. I think a sale was proper, and within the meaning of the statute. The deceased had an interest in the land under a contract which was partially executed, and this interest was the subject of the application and of the sale.

Some other objections are urged which do not require discussion; and after a careful examination, I am satisfied that the sale was valid, and there is no such defect in the proceedings, as to authorize this court to declare that no title was conferred by the deed made in pursuance thereof.

The objection urged, that the children and heirs of Hubbard are necessary parties to this action, I think, cannot be maintained. The sale by the surrogate's order has divested them of all claim. But if the objection is tenable, it has been waived by the failure of the defendant to raise it by answer or demurrer. (Code, § 144, § 148.)

The several objections made to the introduction of evidence, I think, are not valid. Even if some portions of the evidence received were objectionable, it was not of such a character as to materially affect the decision of the case.

Nor do I think that the findings were erroneous. Whether they were correct or not depends upon other questions which I have fully discussed; and as there was no error of the justice in his decision of any of them, I think that the findings can lawfully and properly be upheld.

After a careful examination of the points urged in the elaborate argument of the defendant's counsel, I am satisfied that there was no error upon the hearing of the case, and that the decree entered at Special Term should be affirmed with costs.

Judgment affirmed.