## *In re* FAULKNER'S ESTATE.

### *In re* BINGHAM.

**(Supreme Court, General Term, Fifth Department. June 20, 1890.)**

1. EXECUTORS AND ADMINISTRATORS—PROCEEDING TO SELL DECEDENT'S LAND—PETITION.

Under Code Civil Proc. N. Y. § 2752, prescribing the contents of a petition by the creditors of an estate to subject testator's lands to the payment of his debts, to be all the names of creditors and a description of all decedent's real estate, a petition is not fatally defective because of an omission to describe one tract of land owned by testator, of which the petitioners neither knew, nor could have known by diligent inquiry.

2. SAME—AMENDMENTS.

Names of creditors of the estate, not known at the time of filing the petition, may be subsequently added.

3. SAME—LIABILITY OF ADMINISTRATORS—ASSESSMENT ON BANK STOCK.

The estate of an administrator, who in that capacity held stock in a national bank, and never had it transferred to himself, though he was the sole heir of intestate, is not liable to an assessment on it, under Rev. St. U. S. § 5152, providing that persons holding stock as administrators shall not be personally subject to any liability as stockholders.

Appeal from surrogate's court, Livingston county.

A proceeding to subject the realty of a testator to the payment of his debts. Decree for the creditors, and an appeal. Code Civil Proc. N. Y. § 2750, provides that the creditors of an estate may file a petition to subject the realty of decedent to the payment of their debts within three years after letters of administration granted; section 2751 provides that the time during which an action is pending by the creditors against the administrator or executor shall not be counted as part of the time limited in section 2750; and section 2752 prescribes the contents of the petition to be all the names of creditors, and a description of all of decedent's real estate.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*William A. Sutherland,* for appellant. *McNaughton & Taylor,* for modification of the decree. *John N. Beckley,* for respondent and appellant. *J. H. & C. W. Stevens,* for respondent Christiana Smith.

CORLETT, J. The First National Bank of Dansville was organized under the United States statute of August, 1863. Its capital stock was $50,000. Samuel D. Faulkner died August 9, 1878, intestate and unmarried, leaving

his father, Dr. James Faulkner, his sole heir and next of kin. . Samuel, at the time of his death, owned 50 shares of stock of the bank, and other property to the amount of about $25,000. James Faulkner, the testator, and Henry Faulkner, became administrators of the estate of Samuel. The father, James Faulkner, died in 1884, leaving a will. Letters testamentary were issued upon the will to the son James Faulkner, Jr., one of the executors named therein, who was removed in October, 1887, by the surrogate of Livingston county, and then letters were issued to Lester Faulkner as sole executor. At the time of the death of the said James Faulkner he was the owner of 290 shares of the capital stock of the bank, which has since continued to be owned by his estate. Late in the summer of 1887 the bank failed, and Charles L. Bingham, in September, was appointed receiver by the comptroller of the currency. He qualified, and has since acted in that capacity. On the 28th day of September, 1887, the comptroller made an assessment against the holders and owners of the capital stock of 100 per cent., which became due to the receiver. James, the testator, died seised of several pieces of real estate. During his life-time he exercised control over the stock owned by Samuel at his decease. Samuel's estate was never judicially settled. The personal estate of the testator did not exceed in value $5,000. Letters testamentary upon the will were issued on the 25th day of April, 1885, and on the 25th day of February, 1888, an action was brought by the receiver to recover $29,000, with interest from the 29th day of September, 1887, the amount of the assessment; and on the same day a notice of *lis pendens* was filed in the Livingston county clerk's office, and three days later in the office of the clerk of Allegany county. It thus appears that the receiver's action was brought, and a notice of *lis pendens* filed, about two months less than three years after letters testamentary were issued. Before the three years expired, Charles J. Bissell brought an action in the supreme court to recover $620.65, with interest from the 9th day of October, 1884, in which notice of pendency was filed according to section 2751 of the Code of Civil Procedure. The surrogate of Livingston county also brought an action as relator to recover a sum of money, but no notice of the pendency of the action was ever filed, and no allowance made for the claim. Christiana Smith, a creditor of the testator, recovered a judgment on the 8th day of August, 1888, for $2,875, in an action commenced on the 4th day of October, 1887, in which a *lis pendens* was filed in pursuance of the statute. The above facts were found by the surrogate, as hereinafter explained, upon sufficient evidence. On the 9th day of July, 1888, a petition was filed praying for a decree directing the sale or other disposition of the real estate of the testator to pay his debts, which described all the real estate owned by the deceased, except an undivided interest in his real estate known as the "Tolles Property," owned by Samuel D. Faulkner at the time of his death. The lands described in the petition as parcel No. 14¾, situate in the town of South Dansville, Steuben county, N. Y., containing 86½ acres of land, being all of the Nathaniel Drayton farm, so called, which was owned by said James Faulkner, deceased, at the time of his death, were described in the petition, but were not included in any *lis pendens*. The surrogate was induced to find, on the request of George Hyland, that the 86½ acres above mentioned were not described in the petition. This was a misapprehension and mistake, but the one-half interest in the real estate known as the "Tolles Property" was not described in the petition.

There is no finding of any want of diligence or proper inquiry to ascertain the existence of the Tolles land, and the whole case shows, as matter of fact, that no one connected with these proceedings knew that the testator had any interest in it at the time the petition was filed. No description was contained, or disposition made, of it in the will. The learned counsel for the appellant admits that the omission to describe the Tolles property was excusable, on the ground that the fact could not have been ascertained with diligent in-

quiry. Sections 2750–2752, Code Civil Proc., dispose of the objection. The petition was filed within three years after letters were issued,—an action was pending. The above sections do not require that all the real estate should be mentioned. The leaving out of the Tolles property was not· jurisdictional. The Revised Statutes required a description in the petition of all the real estate, but it was held that, where a portion was omitted by mistake, an amendment could be made by the surrogate including the property left out. *Sheldon* v. *Wright*, 7 Barb. 39–48, affirmed in court of appeals, 5 N. Y. 497. This shows that the original omission was not jurisdictional. To the same effect are *In re German Bank*, 39 Hun, 181, (in this department;) *Richmond* v. *Foote*, 3 Lans. 244. The language of section 2752 of the Code of Civil Procedure is not as mandatory as the Revised Statutes. Some defects were supplied after the filing of the petition by including names not known at the time, but those defects were not jurisdictional. *Barnett* v. *Kincaid*, 2 Lans. 320. Sections 2752–2755, Code Civil Proc., sustain this construction. A willful *devastavit* would not exempt the real estate. 2 Lans., above cited; section 2759, Code. The question of jurisdiction depends upon the petition, which in this case was sufficient for that purpose. None of the claims against the estate were expressly charged upon the realty. *Hamilton* v. *Smith*, 110 N. Y. 159, 17 N. E. Rep. 740. Nor was the real estate converted into personalty by the residuary clause in the will. *Ogsbury* v. *Ogsbury*, 115 N. Y. 290, 22 N. E. Rep. 219; 3 Pom. Eq. Jur. § 1166; *Chamberlain* v. *Taylor*, 105 N. Y. 185, 186, 11 N. E. Rep. 625; *Prentice* v. *Janssen*, 79 N. Y. 478; *Armstrong* v. *McKelvey*, 104 N. Y. 179, 10 N. E. Rep. 266.

The estate of the testator was indebted in the sums · above named. The surrogate's conclusions of law were based upon his findings of fact as contained in the above statement. Hyland is in no position now to ask a reversal, because of a mistake which he induced the surrogate to make. The decree was limited to the lands in Livingston and Allegany counties. There is no force in the objection that the surrogate was personally disqualified. Sections 46, 2497, Code Civil Proc. No objection was taken on this ground. It is not claimed that any injury was inflicted, as the demand in which the surrogate was relator was rejected.

It is insisted that the surrogate erred in refusing to allow the claim of the petitioner upon the assessment of the $5,000 stock owned by Samuel D. Faulkner in his life-time. The surrogate finds that the testator and Henry J. Faulkner were appointed administrators of the goods of Samuel D. Faulkner, and that the testator took possession as administrator of the property left by Samuel D. Faulkner, which consisted mainly of the 50 shares of stock, and an undivided interest in the copartnership property of Sweet, Faulkner & Co.; that no decree settling the accounts of the administrators had ever been made; that the estate of Samuel had never been judicially settled; and that the surviving administrator, Henry J. Faulkner, was removed by the order of the surrogate of Livingston county, and that J. Crisfield was thereupon appointed administrator of such estate; that no transfer of the 50 shares of stock held by Samuel had been made upon the books of the bank. Section 5152 of the Revised Statutes of the United States provides: "Persons holding stock as executors, administrators, guardians, or trustees shall not be personally subject to any liability as stockholders; but the estate and funds in their hands shall be liable in like manner, and to the same extent, as the testator, intestate, ward, or person interested in such trust funds would be if living, and competent to act and hold the stock in his own name." The ground upon which it is sought to charge the testator's estate with the assessment of the 50 shares is that he was next of kin as well as administrator of Samuel, and exercised dominion over the stock as owner during his life-time. But the surrogate's finding shows that the stock always remained in his hands in a representative capacity, and passed in the same form to those who suc-

ceeded him. It was never transferred on the books of the bank, nor are Samuel's accounts judicially settled.

It is urged that all claims against Samuel's estate had been paid except one, which was rejected, and that, therefore, the estate is practically settled. Attention has not been called to any adjudication holding that any individual or his estate shall be charged personally with the payment of debts of the person for whom he is acting as administrator or executor. The stock of this bank is, and for a long time has been, worthless. To charge the testator's estate with the payment of the assessment would be to make it liable for the whole amount, without any way of getting compensation. No reason is perceived for extending the liability of the estate by construction, so as to impose such burdens, or for taking this case out of the provisions of the section above quoted, because of the fact that the testator was next of kin of Samuel as well as administrator. The finding of the surrogate shows that the legal conclusion, that the testator's estate was not liable for the assessment upon that 50 shares, is correct. The decree must be affirmed. All concur.