Shohl, J.
The original action herein was brought by The Western German Bank to assess the stockholders of The Gerke Brewing Company,, an Ohio corporation, which went into the hands of a receiver June 20, 1911. There was a reference to R. A. LeBlond, as referee, who filed his report and findings in favor of the plaintiff. This was confirmed and judgment was rendered for $120,931.64 by the court of common pleas.
The Gerke Brewing Company borrowed various sums of money from the bank in the years 1894 to 1896, inclusive. The notes were not all in the *414 same form, some being discounted and the interest taken out in advance, while some bore interest in accordance with their terms. The notes were renewed from time to time, one of them having been renewed fifty-seven times.
There was also a series of notes made by the brewing company which were made payable to George Gerke, a former stockholder, who had sold out his interest in the brewery to Robert M. Kuerze, his brother-in-law, who was the president of the brewery. The brewing company owed money to Kuerze, who, in turn, owed $60,000 to Gerke. He directed the making of the notes payable to Gerke direct, and the bank thereafter acquired the rights of Gerke in the notes.
There is nothing shown that would impugn the validity of the notes, which the evidence shows were originally given long before the year 1903.
The interest has been paid on all the notes until 1911, when the company went into the hands of a receiver.
At the time of the receivership the brewing company was solvent, and the appraisement made at the time under the direction of the court showed that the assets exceeded the liabilities by over $200,000.
On October 29, 1912, the assets of the corporation were put in liquidation for the benefit of the creditors. The sale of the assets was completed in October, 1913, and, after the payment of certain preferred obligations, the assets proved sufficient to pay only a dividend of 10 per cent, to the creditors. The action to enforce the double liability followed. The change in the Ohio Constitution *415 which did away with double liability of stockholders went into effect in November, 1903.
Several points are urged by plaintiffs in error.
The first contention argued is that the statute of limitations barred plaintiff’s right; that if the right of action accrued at the time of the receivership, the double liability suit was brought too late. The law of Ohio, however, is that a right of action does not accrue against the stockholders of a corporation simply because a receiver has been appointed. The creditors’ right of action against the stockholders only commences when the property is put in liquidation for the benefit of the creditors. Younglove v. Lime Co., 49 Ohio St., 663, and Bronson v. Schneider, 49 Ohio St., 438. This suit was brought within eighteen months of that time and was not too late under the statute, Section 8688, General Code.
The question was raised as to the sufficiency of the proof to establish that the primary liability of the corporation had been exhausted. The record shows, however, that the stock in the corporation had been issued and outstanding, as paid up, since 1881. In any event, the stockholders owed a duty to pay for their stock at that time, and claims against them on their original subscriptions had become barred by the statute of limitations, fifteen years from the time fixed in the call for payment, shown by the books in evidence to be December, 1881. Warner v. Callender et al., 20 Ohio St., 190.
It is clear that no double liability could be imposed upon stockholders for any contract made subsequent to the change in the law in Novem-' ber, 1903.
*416 It is equally plain that as to any obligations existing prior to the change in the law, the stockholders’ liability remains unimpaired. Emerich v. The People’s Coal Co., 21 C. C., N. S., 83, and Scofield v. Excelsior Oil Co. et al., 6 C. C., N. S., 169, affirmed 74 Ohio St., 513.
If, then, the obligations existing against the ¡company when the double liability suit was brought are obligations which existed prior to November, 1903, double liability can be enforced.
The evidence in respect to the renewals shows that a slightly different course was followed in different instances. Certain notes dated prior to the amendment of the constitution are still outstanding and unpaid in their original form. Certain notes were renewed simply by manually exchanging them for new notes. Among these is a note for $20,000 in favor of the bank, which the referee found was replaced by a new note given because the reverse side of the old note during the ten years that it had been outstanding had become completely covered with endorsements of interest marked thereon. The Gerke notes aggregating $60,000 were renewed by simply exchanging the maturing notes for new notes of like amount from time to time. As to the two notes for $5,000 each, the referee found that they were the last renewals of a long chain of notes, one of which was originally for $10,000. The renewals in these instances were accomplished as follows: The Gerke Brewing Company would be notified of the maturity of one of its obligations, and would present to the bank a new note of like tenor and amount except as to date and maturity. The bank went through *417 the form of making a new loan, and the avails were then used by the check of the brewing company to pay the old note, which was returned to the maker.
•In several instances it appears that the brewing company had sufficient funds in the hands of the bank subsequent to November, 1903, to meet the (checks drawn by them in payment of the notes due on those dates, without requiring the use of the avails of the discounts of that day. This is true of the $5,000 note, and also the other $5,000 note which represented an unpaid balance on an original $10,000 note. The reduction in the amount of the latter was made in 1905, when the brewing company had $13,000 to its credit in the bank irrespective of the new discount.
It is contended on behalf of plaintiffs in error that each renewal constituted the making of a new contract, and the payment of the then outstanding note. If such contention is established, it follows that such notes now sued upon are new contracts (made subsequent to the abolition of double liability and can not be the basis of a recovery on such double liability. This question was fully argued. The decisions throughout the various states are not uniform as to this question. See Cook on Corporations (7 ed.), Section 225A. The subject has been so fully treated in the Ohio cases that we regard the decisions' of the other states as not controlling.
The decision in the case of The First National Bank of Wellston v. The Patton Company et al., 13 C. C., N. S., 289, growing out of the claims for ¡double liability against the stockholders of The *418 Patton Company, was affirmed by the supreme court in 87 Ohio St., 497, and is binding upon this court. We have examined the record and the original briefs of that case in the supreme court, and, among others, have also examined the following cases: Chase v. Brundage, 58 Ohio St., 517; Bank v. Green, 40 Ohio St., 431; Bank v. Slemmons, 34 Ohio St., 142; Rawson v. Taylor, 30 Ohio St., 389; Sutliff v. Atwood, 15 Ohio St., 186; Leach v. Church, 15 Ohio St., 169; Merrick v. Boury & Sons, 4 Ohio St., 60; Crumbaugh v. Kugler, 3 Ohio St., 544, and Hauenschild v. Standard Coffin Co., 8 N. P., 124.
The law is that where a new note is given to take up an indebtedness, the presumption is that it is in conditional payment and not absolute payment of the obligation. It will be absolute payment of an obligation if such is the express or implied agreement of the parties. It follows, therefore, that the giving of the new notes constituted payment of the old obligations if, and only if, that was the intention of the parties.
While a note is a mercantile specialty, and for some purposes may be regarded as the obligation itself, ‘it is possible to have an obligation independent of it, and of which it is merely the evidence. Dick, Exrx., v. Hyer, 94 Ohio St., 351, and Bank v. Patton, 13 C. C., N. S., 289 (supra).
The referee and the court below found in the ■case at bar that the intention of the parties was ■that the old obligation should continue to exist, and that the several renewals constituted but a-change in the evidence of the debt. While we might not be disposed to take the same view of *419 the evidence, we do not regard the findings as against the manifest weight of the evidence, and therefore we can not set them aside.
The findings of fact by the referee are given the same effect as a special verdict of a jury. Lawson v. Bissel, 7 Ohio St., 130, 133, and C. & E. Elec. Ry. Co. v. Ritty, 21 C. C., N. S., 568. See also Merrick v. Boury & Sons, 4 Ohio St., 60.
Our doubts are strongest as to the instances in which the notes were renewed at the time that the brewing company had ample funds in the bank. It is not impossible, however, to renew or continue an existing obligation at a bank merely because there are adequate funds available there for its payment. We hold, therefore, that the double liability arises in respect to all of the notes held by the bank.
Interest recoverable as damages follows the principal as an incident to it unless it is separated and set apart as a particular debt. The City of Ohio v. The C. & T. Rd. Co., 6 Ohio St., 490, and 22 Cyc., 1570.
If there was a double liability as to the amount of the notes, the interest would follow the same rule.
Robert M. Kuerze died June 10, 1903. His will named Elizabeth Kuerze, his widow, as residüary legatee. She accepted the appointment, qualified as executrix, and elected to take under the will. At that time she was already the owner of 2,900 shares of stock in the brewing company. On August 24, 1903, she caused 700 shares of the stock standing in the name of her husband to be transferred to her own name, thus increasing her hold *420 ings as shown by the books of the company to 3,600 shares.
On September 30, 1908, The Gerke Brewing Company declared a dividend of 22]/2 per cent, payable in real estate. This was ordered by the company to be transferred to Elizabeth Kuerze in her individual name.
Defendants in error contend that the transfer of the 700 shares constituted an acceptance of the legacy, and thereby made Elizabeth Kuerze at least the equitable owner of all the stock of her former husband. It is urged that she can not accept the legacy in part, and reject in part, and that by accepting the dividends she is estopped to deny her ownership of the stock.
It is true that Mrs. Kuerze, by her election to take under the will, is disabled from contesting its validity.
In regard to the estoppel, it is sufficient to say that the bank was not misled by any representations made by her. There is no basis for any estoppel in the sense in which the word is used by counsel. Ellard, Exr., v. Ferris, Exr., et al., 91 Ohio St., 339, 353. See also Colored Industrial School of Cincinnati v. Bates, Admr., et al., 90 Ohio St., 288.
Nor does her transfer of the 700 shares constitute her the owner of the shares not transferred. It would rather indicate that she was not their owner. The claim overlooks the distinction between a specific and a general legacy. While the right of a distributee vests at the death of a testator (Armstrong v. Grandin, 39 Ohio St., 368, and Conger v. Barker’s Admr., 11 Ohio St., 1), it is *421 subject to distribution. A residuary legatee is entitled only to what remains after all the debts of an estate are paid. It is only after such payments have been made that an executor should pay the legacies at all. In any event, however, there must be some affirmative act to transfer any assets from the executor to the legatee. This subject is covered in 2 Schouler on Wills (5 ed.), Section 1488, a part of which is as follows:
“Where an executor is himself a legatee, assent to his own legacy is needful. And, until his express or implied assent to the legacy has been given in such case, the qualified executor holds the specified thing or fund in his representative capacity, even though all the debts have been paid; for the rule is, that one’s assent can not be inferred from acts equally applicable to the title of legatee and executor. If the executor is residuary legatee he occupies such dual relation to the estate that the court retains control of his official acts until the estate is administered and the residue turned over properly.”
The foregoing is in accord with 2 Williams on Executors, pages 1225, 1233 (bottom paging).
The point is treated in Roebling Sons Co. v. Shawnee Valley Coal & Iron Co. et al., 4 N. P., N. S., 113, 116, 117.
It is urged, however, that the real estate “dividend” was a dividend upon all the stock, including that which is in the name of Robert M. Kuerze on the books. If there had been a dividend in cash it would have been an asset of the estate, like any other asset, and the payment thereof as a partial *422 distribution would not constitute a distribution of the stock on which the dividends accrued.
When a company makes a distribution of its assets in the form of a dividend in real estate, it is not unreasonable for the executrix to take the stock in her own name individually, but for the estate. Nor would it be improper in making partial distribution of the estate to make the deed direct to her as an individual, and for her own benefit. Complications might and no doubt would ensue if the real estate were to come into her hands as executrix and she were to execute a deed as executrix. Executors and administrators normally do not administer real estate.
In regard to the liability of a legatee who has assented to take a general legacy the case of Matter of Bingham, 127 N. Y., 296, is in point. The question there arose upon double liability of national bank stock, which the administrator had never transferred to himself on the books, although he had accepted the legacy. The court say:
“The residuary interest in the stock after payment of the debts of his intestate belonged to him, but while he held the relation of administrator, which he could terminate only through a final judicial settlement of his accounts, it is not seen how he could be treated as having the legal title to the stock other than in his representative capacity. An administrator may, however, after the expiration of the time prescribed by statute for the presentation of claims by creditors, make distribution of the assets to the next of kin, and no? be chargeable to those whose claims were not pre *423 sented. (2 R. S., 89, § 39; Erwin v. Loper, 43 N. Y., 521.) This is not applicable to retention by the administrator, who is also the next of kin, and has not been discharged by and upon judicial settlement of his accounts from that relation. But if in this instance he had procured a transfer upon the bank books of the stock to himself individually a different question may have been presented. There was no error in not treating the assessment upon the fifty shares as the debt of James Faulkner, deceased.”
See same case In re Faulkner’s Estate, 10 N. Y. Supp., 325.
Even if Mrs. Kuerze were to be regarded as the owner of the rest of the stock that belonged to her husband, by reason of any estoppel or taking possession thereof in 1908, it is by no means clear that such transfer of stock after the change in the double liability law would impose upon her the obligation to satisfy creditors, whose claims had existed prior to 1903; but it is unnecessary to decide that point.
It follows, then, that, although there is a double liability as to each of the debts held by the bank, established in the court below, Mrs. Kuerze is liable only as the holder of 3,600 shares of stock.
The judgment should be modified in accordance with the above and as modified will be affirmed.

Judgment modiñed, and affirmed as modified.

Jones, P. J., and Hamilton, J., concur.