60

NATIONAL CITY BANK OF CLEVELAND, SUCCESSOR TRUSTEE, *v.* FORD ET AL.

(No. 869026—Decided January 4, 1973.)

Court of Common Pleas of Cuyahoga County.

*Messrs. Jones, Day Cockley & Reavis* and *Mr. Arthur L. Dougan,* for plaintiff.

*Messrs. Arter & Hadden, Mr. Thomas V. Koykka, Mr. Robert B. Preston, Messrs. Burch, Cracchiolo, Levie, Guyer & Weyl* and *Mr. Paul D. Levie,* for defendants Ferne Bev-

erly Jones Ford, Horatio Clark Ford II, Horatio Clark Ford III, and Ferne Catharine Ford Brown Gohr.

*Mr. Hugh A. Ross* and *Mr. Proctor Patterson Jones,* for defendants Proctor Patterson Jones and Martha Jones.

*Mr. William F. Donahey,* for defendants William F. Donahey, guardian ad litem of Catherine Brown, Christopher Scott Brown, William M. Dennis Brown, minors, and William F. Donahey, trustee for the unborn heirs of Ferne Beverly Jones Ford.

*Mr. Spencer Neth,* for defendants Spencer Neth, guardian ad litem of Proctor Patterson Jones, Jr., Jessica Haig Jones, Katherine Windisch, minors, and Spencer Neth, trustee for the unborn heirs of Proctor Patterson Jones.

*Messrs. Baker, Hostetler & Patterson, Mr. H. Stephen Madsen* and *Mr. Francis J. Amer,* for defendants Melinda J. Windisch, Greta Jones Jones, John Beverly Jones II, and Martha Ferne Jones.

FINK, J.  On February 15, 1929, Proctor Patterson (hereinafter referred to as Settlor) created an irrevocable *inter vivos* trust, the interpretation of which is the subject of this action.  Into this trust the Settlor placed certain realty (the family home on Edgewater Drive) and about $130,000 in securities.  The trust value at present exclusive of realty is in excess of $4,000,000.

The Settlor had one daughter, Ferne Catharine Patterson Jones (hereinafter referred to as the Daughter), who died in 1968.  The Daughter married and bore a son, Proctor Patterson Jones (hereinafter referred to as the Grandson) born May 25, 1916, and a daughter, Ferne Beverly Jones (hereinafter referred to as the Granddaughter), born June 20, 1917.  The Grandson has married twice and has 6 living children and 3 living grandchildren.  The Granddaughter has 2 living children and 3 living grandchildren.  Everyone is a defendant in this action and all of the Settlor's grandchildren and great-grandchildren are represented by counsel.

Briefly stated, the controversy is this: Granddaughter became the income beneficiary of the trust when her mother

died in 1968. She claims that at her mother's death she became entitled to the trust corpus and she has requested the successor trustee, National City Bank of Cleveland, Petitioner herein, to terminate the trust and to distribute the principal to her. Grandson disagrees and claims that he will become the income beneficiary should he survive his sister. If he does not renounce the income and accelerate the remainders, which he claims he can do, after his death the principal is to be distributed half to his "legal heirs" and half to his sister's "legal heirs."

The trustee bank disagreed with Granddaughter's claim of right to the corpus and with Grandson's right to prematurely terminate the trust by renunciation of his life estate in the income. The bank petitioned the court for a declaratory judgment in which the following questions are to be answered:

(a) Is defendant Ferne Beverly Jones Ford, entitled now to distribution to her of the principal of the trust?

(b) If the answer to question (a) is in the negative, will defendant Proctor Patterson Jones, be entitled to distribution to him of the principal of the trust if he survives his sister, Ferne Beverly Jones Ford?

(c) If the answer to questions (a) and (b) are in the negative and if Proctor Patterson Jones survives Ferne Beverly Jones Ford and renounces his life estate in the income from the trust, (i) will the remainder interests be accelerated; (ii) if the remainder interests are accelerated, will the legal heirs of Ferne Beverly Jones Ford and Proctor Patterson Jones, respectively, be determined as though Proctor Patterson Jones had died at the time of his renunciation; and (iii) if remainders are not accelerated, what disposition should be made of the income during Proctor Patterson Jones' life after his renunciation?

(d) If the answer to questions (a) and (b) are in the negative, will the "legal heirs" of Ferne Beverly Jones Ford and Proctor Patterson Jones, respectively, be determined to be those persons entitled to share under the Ohio Law of Descent and Distribution, and in the shares fixed thereby, including the surviving spouse if any, or will they

be those persons entitled to take by filial relationship (including adoption) under the Ohio Law of Descent and Distribution as though the decedent were not survived by a spouse?

The Settlor also executed a will in 1929, and in 1945 established a trust containing the largest part of his assets. It provided income to the Settlor for life, and after his death, income in equal shares to his Daughter, to her husband and to the two grandchildren. When all four income beneficiaries have died, the trust *res* is given over to charity.

*Issue Nos. 1 and 2:*

Is Defendant Ferne Beverly (Jones) Ford, the Granddaughter entitled *now* to distribution of the trust principal? If not, is Proctor Patterson Jones, the Grandson, entitled to the principal of the trust if he survives his sister?

The answer to both questions is "No." The pivotal sections of the 1929 trust are Article Third (which designates beneficiaries) and Article Fifty (termination of the trust). Article Third reads:

"The beneficiary under this trust shall be my daughter Ferne Patterson Jones during her life time, and thereafter the beneficiary under this trust shall be my granddaughter Ferne Beverley Jones during her life time, and thereafter the beneficiary under this trust shall be my grandson Proctor Patterson Jones."

This is, in my opinion, a provision for successive life estates in the income. The Daughter received the income from 1929 to her death in 1968. In 1968 the Granddaughter became the income beneficiary. When Granddaughter dies, the income beneficiary will be the Grandson. This much is clear from the language of the trust. There is no need to belabor the thesis that the Settlor's intent governs and must be ascertained, wherever possible, from the language used in the instrument. Settlor is presumed to have meant what he said. *Shook* v. *McConnell* (1951), 59 Ohio Law Abs. 358, 97 N. E. 2d 111. The path of choice is to give words their usual and ordinary meaning and then see what, if any, inconsistencies result. See *Findley* v. *Conneaut*

(1945), 145 Ohio St. 480. In the instant case, it is of no great moment that the last part of the article does not also say "during his lifetime." It has to mean "during his lifetime"—or that part of the article doesn't make sense.

Interpretation of the word "beneficiary" in Article Third to mean "income beneficiary" *only* is bolstered when this article is read together with Article Second (3), which instructs the trustee to:

"* * * Pay to the beneficiary under this trust at the time existing, the entire net income derived from the trust estate in quarterly installments or oftener as requested by said beneficiary and approved by the trustee."

The use of the word "beneficiary" by the Settlor, wherever used in the trust (Article Second (2), (3), Article Third, Article Fifth (1), (2)) is best understood to mean the income recipient.

Article Fifth provides that the trust:

"* * * shall be terminated and cease upon either the death of all the beneficiaries under this trust specifically named in Article Third hereof, or on June 19, A. D. 1938 in the event that my granddaughter Ferne Beverley Jones be then living and the beneficiary under this trust, or on May 25, 1946 if my grandson Proctor Patterson Jones be then living and the beneficiary under this trust, whichever event shall first happen."

The language is clear and capable of only one internally consistent interpretation. The trust terminates when the first of these three events occurs:

(1) All three beneficiaries are dead.

(2) On June 19, 1938, if Granddaughter is alive and the beneficiary under the trust.

(3) On May 25, 1946, if Grandson is alive and the beneficiary under the trust.

On June 19, 1938, Granddaughter's 21st birthday, Granddaughter was alive but *not* the income beneficiary at that time. Her mother was the income beneficiary on that date. On May 25, 1946, Grandson's 30th birthday, Grandson was alive but not the income beneficiary. His mother was still the income recipient on that date. I have read the word "on" in alternatives 2 and 3 to mean "on

that day and none other," not "on that day and thereafter." To interpret it as "on that day and thereafter" would be a gross, impermissible rewording of the sentence and a consequent totally indefensible and unintended disposition of the trust assets.

Thus alternatives 2 and 3 did not and no longer can occur. They are now dead issues. The only event which is still possible is the first alternative. Incidentally, there is no need to embellish this alternative by reading into it a common catastrophe and no hint, anywhere else in the instrument that a triple tragedy was in the Settlor's mind. So, when all three beneficiaries named in Article Third have died, the trust shall terminate. Then, according to Article Fifth (2):

"* * * all of said property and funds constituting the trust estate shall be distributed one-half (½) to the legal heirs of my said granddaughter Ferne Beverley Jones and one-half (½) to the legal heirs of my said grandson Proctor Patterson Jones, in accordance with the statutes and the laws of Ohio in respect to descent and distribution of property."

*Issue No. 3:*

If Grandson survives Granddaughter and renounces his life estate in the trust income, will this cause a termination of the trust and an acceleration of the remainder interests? If not, what disposition will be made of the renounced income?

Grandson's renunciation of the income will cause neither the remainder interests to accelerate nor the trust to terminate. Trust law is to the effect that all the beneficiaries (vested or contingent), not under an incapacity, can consent to and thus bring about the termination of a trust, provided that a material purpose of the trust does not remain unfulfilled. If any beneficiary is unascertained or unborn termination cannot be forced. (See *Mumma* v. *Huntington Natl. Bank of Columbus* [1967], 9 Ohio App. 2d 166.) If one or more of the beneficiaries do not consent or are under an incapacity, the other beneficiaries cannot compel termination.

The issue of Grandson and Granddaughter have a

vested remainder in the 1929 trust, possibly (but not probably) subject to defeasance if they predecease their beneficiary parent. But the identity of Grandson's and Granddaughter's "legal heirs" cannot now be determined. Most commonly, the word "heirs" describes those persons who would inherit under the laws of intestacy. An heir becomes an heir at the time of death of the ancestor in question. *Casey* v. *Gallagher* (1967), 11 Ohio St. 2d 42; *Kraemer* v. *Hook* (1958), 168 Ohio St. 221; *Tiedtke* v. *Tiedtke* (1952), 157 Ohio St. 554. And so, until Grandson and Granddaughter have died, neither has any "legal heirs."

*Issue No. 4:*

What law of descent and distribution will govern the disposition of the trust principal?

Trust Article Fifth (2) requires that the trust estate be distributed "in accordance with the statutes and laws of Ohio in respect to descent and distribtion of property." Whereas a will speaks at the testator's death and the law to be applied is the law in force at the time of death (*Ohio Natl. Bank of Columbus* v. *Boone* [1942], 139 Ohio St. 361), an *inter vivos* trust speaks from the date of its creation. *First Natl. Bank of Cincinnati* v. *Tenney* (1956), 165 Ohio St. 513. In view of the Ohio Supreme Court holding in *Central Trust Co.* v. *Bovey* (1971), 25 Ohio St. 2d 187, that the intent of a settlor of an *inter vivos* trust be determined in light of the law existing at the time of the trust's creation, it seems incontrovertible that the laws of intestacy in effect in Ohio in 1929 will control the definition of "heirs" and the ultimate distribution of the corpus. Accord *In re Vought's Trust* (1967), 29 App. Div. 2d 97, 285 N. Y. Supp. 2d 780; *In re Kellogg's Trust* (1962), 36 Misc. 2d 1064, 234 N. Y. Supp. 2d 668.

The 1929 law of Ohio is in Throckmorton's 1930 Annotated Code of Ohio. General Code Sections 8573, 8574 and 8578 state, *inter alia*, that realty and personalty devolve first upon the children of the intestate or their legal representatives. Wives will inherit only if there are no children or legal representatives. The term "legal representatives" means the lineal descendants of the inheriting children.

The word "children" includes adopted children, according to General Code Section 8030, unless they are expressly excluded by the language of the document, *e. g.,* "lawful issue," "surviving heirs of the body." *Natl. City Bank* v. *Mitchell* (1968), 13 Ohio App. 2d 141. There is no exclusory language in the 1929 trust.

In summary, neither Grandson nor Granddaughter is entitled to the trust *res,* now or ever. Life estates in the income are serial, now to the Granddaughter, then to the Grandson, should he survive her. No acceleration of remainders is possible by renunciation of any life income. When both Grandson and Granddaughter are dead, the trust terminates. Half the trust *res* will then be owing to Granddaughter's legal heirs and half to Grandson's legal heirs. Heirs will be determined at the time of death of each of Grandson and Granddaughter and the law to be applied should be that in effect in Ohio in 1929, the date of the trust's creation.

*Judgment accordingly.*