CHARLES B. TYLER, EXR., *vs.* EMELINE F. TALLMAN *et al.*

MARCH 4, 1908.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)  *Residue. Specific Devise. Charging Legacies on Realty.*

A will directed the executor to sell at public or private sale all real estate of testator (with the exception of the Breck building).

The personal property of the estate was not sufficient to pay the pecuniary legacies in full, and, it becoming necessary to sell residuary real estate, if any, on the question whether the Breck building constituted a part of such residuary estate or was a specific devise:—

*Held,* that the effect of placing realty with the residue was to subject it to the general rule governing residuary estates, that where legacies are given, and without creating any express trust for their payment a general residuary disposition is made of the whole estate, blending realty and personalty together, the real estate will be charged with the legacies.

*Held,* that the building constituted a part of the residuary estate, and was not a specific devise, as claimed, on the ground that as the direction to sell included all real estate, except the Breck building, none of testator's property except the Breck building could be regarded as real estate under the will, and so pass under the residuary clause.

BILL IN EQUITY on facts set out in opinion. Heard on appeal of respondent, and dismissed.

DUBOIS, J. This is a suit in equity brought by the executor of the will of Charles H. Atwood, deceased, for the purpose of establishing a lien upon certain real estate of the deceased in favor of the pecuniary legacies created by said will in order that the same may be sold to pay said legacies.

The cause is in this court upon the appeal of the respondent Emeline F. Tallman from the final decree of the Superior Court adjudging "that the pecuniary legacies created in and by the will of Charles H. Atwood are and they are hereby declared to be a charge or lien upon the real estate in said bill of complaint mentioned as the 'Breck Building'" (describing it) . . . and "that the complainant, Charles B. Tyler, as executor of said will of Charles H. Atwood, be and he is hereby authorized, empowered and directed to sell said real estate with the buildings and improvements thereon at public auction, or at private sale, at a price not less than Twenty-three Thousand Dollars, and to apply the proceeds of such sale to the payment in full of the pecuniary legacies as provided in said will in so far as needed and sufficient therefor, and to dispose of the surplus, if any, in the manner provided by said will."

The case was heard upon bill and the answer of the appellant. It appears therefrom that Charles H. Atwood died January 11, 1905; that his will, dated June 10, 1901, was duly probated,

and contains nineteen clauses. The first clause directs the payment of just debts and funeral expenses out of the estate. The second clause directs the executor to sell at public auction or at private sale all real estate of which the testator shall die seised and possessed or be in any manner entitled to at the time of his decease (with the exception of the Breck building, on North Main street, in the city of Providence), with power to convey and authority to receive the purchase money. The third clause contains a specific bequest of furniture, household and personal effects, etc., to the appellant, if living at the time of the decease of the testator; but if not, then to the appellee. By the fourth clause the sum of forty thousand dollars is bequeathed to the appellant if living at the time of the decease of the testator; but if not, said legacy is bequeathed to the appellee. The fifth clause contains a bequest of thirty thousand dollars to the appellee if living at the time of the decease of the testator. Clauses six and seven contain certain bequests to the appellee in trust. In clauses eight to sixteen small legacies are given to persons therein named.

The seventeenth clause reads as follows: "All the rest, residue and remainder of my estate, both real and personal, and wherever situated, that I shall be seised and possessed of or be in any manner entitled to at the time of my decease, including all legacies herein given which shall have lapsed by reason of the death of the legatees to whom such legacies were given, I give, devise and bequeath unto my said sister Emeline F. Tallman, if she be living at the time of my decease, and in case my said sister Emeline F. Tallman shall not be living at the time of my decease, I give, devise and bequeath all said rest, residue and remainder of my said estate unto my friend, Charles Byron Tyler, of said Warwick, absolutely, to him, his heirs and assigns forever."

In clause eighteen the appellee is nominated and appointed executor without bond and exempted from filing inventory or rendering account, with power to sell personal property at public auction or private sale.

The nineteenth is a clause revoking previous wills.

It appears that the personal property of the estate is not

sufficient to pay the pecuniary legacies in full. It is therefore clear that it will be necessary to sell the residuary realty of the estate, if any there be, in order to obtain funds for such payment. It becomes important to inquire whether the Breck building constitutes a part of the residuary estate. The appellant claims that it does not; that the devise of the Breck building is specific, and argues as follows: "The will, in clause 2, contains a direction for the conversion, out and out, and for all purposes, of all the real estate to which the testator shall be entitled at his decease, except the Breck Building. All the real estate to which he was entitled at his decease, except the Breck Building, is therefore, to be deemed and regarded as personal estate.

" 'As there is no intimation in the will that this sale is for any specific purpose, it must be regarded as an out and out conversion of this real estate into personalty, and must be deemed to have been made from the testator's decease.' Per Matteson, C. J., *Haszard* v. *Haszard*, 19 R. I. 374, 378. To the same effect: *King* v. *King*, 13 R. I. 501; *Holder, Petitioner*, 21 R. I. 48; *Van Zandt* v. *Garretson*, 21 R. I. 352, 418.

"As the direction to sell includes after acquired real estate, none of the testator's property, except the Breck Building, could in any event be regarded as real estate under his will. It follows that nothing except the Breck Building could in any event pass under the residuary devise. *In re McGraw's Estate*, 19 N. E. (N. Y.) 233, 256. What real estate, except the Breck Building, the testator had when he executed the will, and whether he afterwards acquired any, it is for this purpose unnecessary to inquire. It is an inevitable conclusion from the will itself that nothing except the Breck Building could pass under the residuary devise. The devise is therefore specific because it can be satisfied only by a specific part of the testator's estate which is identified and distinguished from all other property of the same kind. *Martin, Petitioner*, 25 R. I. 1, 14, 15; *Dean* v. *Rounds*, 18 R. I. 436; 18 Am. & Eng. Encyc. Law, 2d ed. p. 714.

"Under the old law, before after acquired realty passed by will, every devise was called specific, because if a testator,

seized of Blackacre, Whiteacre, and Greenacre, devised Black-
acre to A. B., and the residue to C. D., nothing but Whiteacre
and Greenacre could pass to C. D., and the devise to him was
therefore in a certain sense, specific. 3 Jarman, Wills, 5th
Am. from 4th London ed. p. 450. It was not specific, however,
to the extent that the devise of the Breck Building here is
specific; for in order to know that only Whiteacre and Green-
acre passed under the residuary devise, it was necessary to
know that the testator had only Blackacre, Whiteacre, and
Greenacre at the date of his will. In fact, the only difference
between the old law and the present in this respect is that
now the inquiry is what real estate the testator had at his
death, whereas formerly it was what he had at the date of the
will and continued to have at his death. It was as necessary
then as now to go outside the will to ascertain what passed
under a residuary devise. It has never been necessary to go
outside the will to ascertain what passed under a specific
devise, except, of course, to ascertain whether the testator had
the specific property which he assumed to dispose of, a require-
ment necessarily applying to every specific devise and every
specific bequest. In a word, then, the devise of the Breck
Building has the attribute that no mere residuary devise ever
had, even under the old law, and which every specific devise
has always had. It can be satisfied only by a specific part of
the testator's real estate identified and distinguished from all
other property of the same kind, and what that part is can be
ascertained from the will itself. We submit that this is the
distinguishing factor between the two classes of devises, and
that, consequently, the devise of the Breck Building is specific.
*Page* v. *Leapingwell*, 18 Ves. 463, 466.

"If this conclusion is well founded, it would seem to follow
that the pecuniary legacies are not chargeable on the Breck
Building. *Wood* v. *Hammond*, 16 R. I. 98, 120; *Jamieson,
Petitioner*, 18 R. I. 385; *Larkin* v. *Larkin*, 17 R. I. 461; *Martin
Petitioner*, 25 R. I. 1, 14, 15."

But she also argues that if it should be held to be residuary
realty it is only *prima facie* chargeable with pecuniary legacies;
that the charge is merely implied, and does not exist where

the will shows a contrary intent, and that this will does show such contrary intent, "an intent that the Breck Building shall remain unsold and pass to Mrs. Tallman as real estate. The express direction to sell all the real estate with the exception of the Breck Building is, in itself, an implication that the Breck Building is not to be sold. *Thomas* v. *Britnell,* 2 Ves. 313. And this implication is fortified by the power given the executor in clause 2, to execute and deliver deeds of 'said real estate,' *i. e.,* of all the real estate except the Breck Building, and by the power given him, in clause 18, to sell the personal estate. The testator, having in mind the matter of powers of sale, carefully conferred them as to every other part of his estate, real and personal, and as carefully omitted to confer them as to the Breck Building. *Expressio unius est exclusio alterius.* It is not to be supposed that he would have taken so much pains to distinguish the Breck Building from the rest of the estate, if his intention had been merely to postpone its sale until the other real estate had been sold. If there is one thing which stands out clearly on the whole will, it is that he regarded the Breck Building as valuable property and intended that it should be held on to. He does not say what his will is in the event of a deficiency of the pure personalty and the converted realty, but he does show that his will is to preserve the only centrally located property he owned, in order to give his sister the benefit of the unearned increment to be expected therefrom. To conclude that he intended to deprive her of that increment, rather than that legacies to strangers should in small measure abate, is to attribute to him a lack of family pride and affection which the will nowhere discloses. *Robinson* v. *McIver,* 63 N. C. 645; *Browning* v. *French,* 24 L. T. R. 649, 650."

(1) The argument is ingenious, but not convincing. The will appears to be properly and carefully drawn, and is free from ambiguity. There is nothing indicative of ignorance or uncertainty about it. It would have been no more difficult for the testator to have made a specific devise, if he had so desired, than it was for him to make a specific bequest as he did. The last place one would think of looking for a specific devise is

in the residuary clause of a will. We can not assume that property therein disposed of was mentioned unintentionally or by accident. The effect of placing realty with the residue was to subject it to the general rule governing residuary estate. The rule is well stated in Hill on Trustees, 4th Am. ed. *p. 360: "It is clearly settled that where a testator gives several legacies, and then without creating any express trust for their payment makes a general residuary disposition of the whole estate, *blending the realty and personalty together in one fund,* the real estate will be charged with the legacies; for in such case the 'residue' can only mean, what remains after satisfying the previous gifts." This doctrine has been recognized and followed in *Lewis* v. *Darling,* 16 How. (U. S.) 1, 10 (1853); *Gould* v. *Winthrop,* 5 R. I. 324 (1858); *Lapham* v. *Clapp,* 10 R. I. 543 (1873); *Mathewson & Arnold, Petitioners,* 12 R. I. 145 (1878); *Phillips* v. *Clark,* 18 R. I. 630 (1894); and *In re Will of Francis Willis,* 25 R. I. 336 (1903); as well as in the numerous cases cited in the opinions in the foregoing cases.

In *Greville* v. *Browne,* 7 H. L. Cases, 689, 696 (1859), Lord Campbell states the rule in the following language: "For nearly a century and a half this rule has been laid down and acted upon, that if there is a general gift of legacies, and then the testator gives the rest and residue of his property, real and personal, the legacies are to come out of the realty. It is considered that the whole is one mass; that part of that mass is represented by legacies, and that what is afterwards given, is given minus what has been before given, and therefore given subject to the prior gift. That seems to me to be the view which was taken in the cases before Lord Cowper and Lord Macclesfield. The language in which it is expressed varies from time to time, but still that rule seems to have been uniformly acted upon, and I would say, in the language used by Vice-Chancellor Page Wood, in the last case upon the subject, *Wheeler* v. *Howell,* that in the present case 'I feel that I should be only introducing a useless and mischievous distinction if I held the legacy not to be a charge, the principle of the decision being in truth the same in the case of legacies as in that of debts.'

"I therefore conceive it to be unnecessary to travel over and criticise that long series of cases which seems to establish that as a general rule which must be acted upon, that the testator, in using this language in his will, must be supposed to use it according to the sense in which the words have uniformly been construed, and to mean that the legacies should be a charge upon the real estate."

This reasoning is unanswerable, and is decisive of this case. Even if there may be an exception to the rule, which we do not admit, there is nothing in the will to take it out of the rule.

The respondent's appeal is therefore dismissed, and the decree of the Superior Court is affirmed. Cause remanded to the Superior Court for further proceedings.

*John W. Hogan and Philip S. Knauer,* for complainant.
*Edwards & Angell,* for respondent Emeline F. Tallman.
*Albert Gerald,* of counsel.