Bell, J.
 

 At the outset we deem it both pertinent and proper to say that, in cases involving the construction of wills, the sole function of the court is to ascertain and give effect to the intention of the testator. Such intention must be ascertained from the words ■ employed in the will by giving to such words their usual and ordinary meaning. See
 
 Townsend’s Exrs.
 
 v.
 
 Townsend,
 
 25 Ohio St., 477. It is not the function or the province of a court to make a new and different will for a testator under the guise of construing the will made by him.
 

 We, are dealing here with a charitable trust. Where charitable trusts have been involved, this court, for the better part of a century, has applied liberal rules of construction. In some cases, under proper circumstances, the doctrine of
 
 deviation
 
 has been applied; in other cases, where the facts and circumstances warranted, the doctrine of
 
 ey pres
 
 has been invoked. How'
 
 *487
 
 ever, the doctrine of
 
 deviation
 
 or of
 
 cy pres
 
 has been applied only in cases where exact compliance with the provisions of the will would defeat or substantially impair the accomplishment of the purposes of the trust. See
 
 Trustees of McIntire Poor School
 
 v.
 
 Zanesville Canal & Mfg. Co.,
 
 9 Ohio, 203, 34 Am. Dec., 436;
 
 McIntire’s Admrs.
 
 v.
 
 City of Zanesville,
 
 17 Ohio St., 352;
 
 Zanesville Canal & Mfg. Co.
 
 v.
 
 City of Zanesville,
 
 20 Ohio, 483;
 
 Mannix, Assignee,
 
 v.
 
 Purcell,
 
 46 Ohio St., 102, 19 N. E., 572, 15 Am. St. Rep., 562, 2 L. R. A., 753;
 
 Winder et al., Exrs.,
 
 v.
 
 Scholey et al., Trustees,
 
 83 Ohio St., 204, 93 N. E., 1098, 33 L. R. A. (N. S.), 995;
 
 Palmer
 
 v.
 
 Oiler, Exrx.,
 
 102 Ohio St., 271, 277, 131 N. E., 362; and
 
 Gearhart
 
 v.
 
 Richardson,
 
 109 Ohio St., 418, 142 N. E., 890. Neither of these doctrines has application to a situation wherein the settlor has provided alternate plans to carry out the purposes of the charitable trust, at least one of which is legal and possible of performance. See 5 Ruling Case Law, 347 and 365.
 

 With these observations in mind we proceed to the specific questions upon which the Probate Court was asked to make declaration.
 

 Question one. “Did the corporate city of Conneaut, Ohio, or the corporate village of Geneva, Ohio, have any lawful authority to issue bonds or expend funds raised by taxation, for the support of such a school as is provided for in said will?”
 

 The answer to that question depends upon whether the testator intended to provide for the establishment of a sectarian or nonsectarian school.
 

 The language used by the testator upon the subject of the kind of school to be established is as follows: •
 

 “Said school shall provide practical education for students of both sexes in the useful arts and sciences
 
 and in connection therewith the teachings of the Holy Bible shall be made a prominent feature
 
 in bringing to the minds of the young the practical value of follow
 
 *488
 
 ing its precepts in the attainment of success in everyday life.
 
 Said school shall be Protestant in ethics and teaching, but otherwise undenominational
 
 and shall not exclude from its benefits those of any other faith. It shall be the rule of the school that all students, teachers and officers shall observe the Sabbath Day and attend Sunday school and preaching’ services and
 
 that each session shall be opened with scripture reading from the Bible and with prayer, and all students shall, as a condition to their admission to said school, pledge themselves to faithfully keep and observe these conditions which shall be rides of said school
 
 as well as all other rules consistent herewith which may be formulated for the government of said school.” (Emphasis supplied.)
 

 Construing those words in their ordinary sense it would seem uncontrovertible that the testator intended that a Protestant school should be established, but that no person of any other faith should be excluded from attendance so long as such person pledged himself or herself to abide by the conditions prescribed in item X, which were to become a part of the rules of the school.
 

 Both the Probate Court and the Court of Appeals concluded, as we conclude, that the testator intended to establish a sectarian school.
 

 Our next step is to consider whether a municipality in Ohio has authority to issue bonds or expend funds raised by taxation to help support a sectarian school.
 

 Section 7, Article I of the Constitution reads as follows :
 

 “All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience. No person shall be compelled to attend, erect, or
 
 support
 
 any place of worship, or maintain any form of worship, against his consent;
 
 and no preference shall be given, by law, to any re
 
 
 *489
 

 ligious society,
 
 nor shall any interference with the rights of conscience be permitted. No religious test shall be required, as a qualification for office, nor shall any person be incompetent to be a witness on account of his religious belief; but nothing herein shall be construed to dispense with oaths and affirmations. Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the General Assembly to pass suitable laws to protect every religious denomination in the peaceable enjoyment of its own mode of public worship, and to encourage schools and the means of instruction.”
 

 Under the above-quoted section of the Constitution, as construed by this court, a municipality is without authority to issue bonds or expend funds raised by taxation for the support or maintenance of a sectarian school. The provision as to the issuance of bonds by the municipality which accepted the gift was impossible of performance under the law.
 

 Question two. “What, if any, interest or right has the corporate city of Conneaut, Ohio, in said fund, at this time?”
 

 On July 11, 1938, the trustees offered the gift, provided for in item X, to the city of Conneaut, Ohio. On that same date the city acknowledged receipt of the offer. The city failed to accept the gift or to perform the conditions to entitle it to the fund. The city now makes no claim to this gift. The city of Conneaut has no right or interest in the fund.
 

 Questions three, four and five will be considered together.
 

 Question three. “What, if any, right or interest has the corporate village of Geneva, Ohio, in said fund at this time?”
 

 Question four. “Did the passage of ordinance No. 771 by the council of the village of Geneva, Ohio, con
 
 *490
 
 stitute compliance with the terms and conditions of the will of said testator?”
 

 Question five. “Was the village of Geneva, Ohio, required to comply with all of the provisions of said will before July 24th, 1940?”
 

 On July 24,1939, the gift was offered by the trustees to the village of Geneva, Ohio, and on the same day the village by resolution acknowledged receipt of and accepted the offer. On June 10, 1940, the village passed an ordinance accepting the gift.
 

 Reverting to item X, it is provided therein that the village must .accept the offer within one year after receipt thereof. This has been done. It is further provided that the fund is
 
 “to be used in the establishment of said school, on condition that said city [vil
 
 lage]
 
 shall provide therefor, free of cost to my estate, a suitable and ample site for said school, centrally located, and by the issuance of five (5) per cent bonds provide a sinking fund of one hundred thousand ($100,000) dollars to be forever maintained to provide income for the support and maintenance of said school, or otherwise seciore to said school such fund as ivill at all times provide said school tuith an income of five thousand dollars ($5,000) per annum.”
 

 The above-quoted language creates two conditions precedent to the right of the village to receive the gift. In other words, before the trustees are authorized to deliver the gift to the village it must be able to show to the satisfaction of the court that it has provided an ample, centrally located site for such school in the village, and further that it has secured a fund which will at all times provide the school with an income of $5,000 per annum. The record discloses that the board of education of the village of Geneva, Ohio, on October 30,1941, conveyed to the village of Geneva, a tract
 
 *491
 
 of ground for use as a building site for the Record Polytechnic School.
 

 Appellees claim that the village, having failed to comply with the prescribed conditions within one year from the date of the offer, has no right or interest in such fund.
 

 With that contention we do not agree. As we construe the language of the testator upon that subject, it means that at any time within one year from the date of the offer the village could accept the proposition.
 

 It seems quite obvious that if the village did not accept the gift, then it was under no duty to comply with the conditions. However, if it did accept the offer, no time being fixed for compliance by the testator, we think, as the Court of Appeals thought, that the village should have a reasonable time thereafter to acquire the site and raise the funds necessary to entitle it to the testator’s gift.
 

 The record discloses that the residue of the testator’s estate at the time of his death, designated for the establishment of the school, was about a quarter of a million dollars and that at the time of the trial was about nine hundred thousand dollars. By reason of that fact appellant contends that under the doctrine of deviation the court should direct that the augmented portion of the fund be used for the purpose of maintenance, in lieu of the $5,000 per annum income which the village was to provide.
 

 It has been pointed out that the doctrine of deviation is applied only to prevent failure of the purpose of a charitable trust.
 

 In 2 Restatement of Trusts, 1176, Section 381, the rule as to deviation is stated thus:
 

 “The court will direct or permit the trustee of a charitable trust to deviate from a term of the trust if it
 
 *492
 
 appears to the court that compliance is impossible or illegal, or
 
 that owing to circumstances not known to the settlor and not anticipated by him
 
 compliance would defeat or substantially impair the accomplishment of the purposes of the trust.” (Emphasis'supplied.)
 

 The fact that the village of Geneva may never qualify to receive this gift will in no way defeat or substantially impair the accomplishment of the purpose of the trust. The testator has provided two alternate plans and under either of which the purposes of the trust can be fully accomplished.
 

 We conclude that the testator had the right to prescribe conditions precedent to the taking effect of the gift; that the village of G-eneva, Ohio, has no right to or interest in the fund until it complies with those conditions; that the passage of the ordinance of acceptance did not constitute compliance with those conditions; and that the village was not required to comply with all the terms and conditions within one year after it received the offer of the gift.
 

 Upon the remaining question as to what is a reasonable time in which the village should be required to comply with the terms and conditions prescribed in item X of the will, we think that the period of one year from the entry of the decree herein is a reasonable time and that unless the village does comply within that time its right to receive the gift should be forever barred.
 

 Question six. “Are said trustees now empowered by the provisions of item X to proceed with the execution of the trust therein created?”
 

 In view of our conclusions, the trustees are not empowered at this time to proceed with either of the alternate plans provided by the will.
 

 It follows that the Court of Appeals did not err in
 
 *493
 
 its conclusions and its judgment should be modified and hereby is affirmed as modified.
 

 Judgment modified and affirmed as modified-
 

 Weygandt, C. J., Zimmerman, Williams, Turner, Matthias and Hast, JJ., concur.