BERGER ET AL., EXRS., *v.* BERGER ET AL.

(No. 789256—Decided May 4, 1973.)

Common Pleas Court of Cuyahoga County, Probate Division.

*Messrs. Rippner, Schwartz & Carlin,* for plaintiffs.

*Mr. S. E. Stein* and *Messrs. Weiss & Weiss,* for defendants Dr. Earl Berger, Joseph Mazarow, Julius Berger, and Julius Berger, trustee for Jeanne and David Berger, Anna Supitor, Ruzina Petrakowa and Karl Petrak.

*Messrs. Garber, Gutfeld & Jaffe* and *Messrs. Kahn, Kleinman, Yanowitz & Arnson,* for defendants Jewish National Fund et al.

*Messrs. Berkman, Gordon, Kancelbaum & Schwartz,* for defendant Park Synagogue.

ANDREWS, Chief Referee. This action seeks the construction of the will and codicil of Isaac B. Wulkan, who died on February 24, 1970, leaving no surviving wife or lineal descendants.

Item I of Mr. Wulkan's will directs that his just debts and funeral expenses be paid out of his estate.

Item II (a) bequeaths $5,000 each to the testator's "beloved nephew Dr. Earl Berger," his "beloved nephew Julius Berger," and, jointly, to his "beloved neice [*sic.*] and her husband Mildred Berger Mazarow and Joe Mazarow."

Item II (b) and (c) each gives $10,000 in trust to Julius Berger, the first for the benefit of David Berger, son of Dr. Earl Berger; and the second for the benefit of Jeanne Berger, daughter of Dr. Earl Berger. Each trust is to fail if the beneficiary predeceases the testator.

Item II (d) was revoked by a codicil, which sets forth a number of pecuniary bequests to various relatives of the testator's deceased wife, in the total amount of $20,005. Any reference by me in this opinion to Item II (d) is to the codicil. The total amount of the pecuniary bequests in Item II (a) through (d) is $55,005.

Immediately following Item II (d) is an unlettered paragraph directing that the bequests in paragraphs (a) through (d) are to be paid from cash only. However, if there is insufficient cash in the estate to pay them, portions of the testator's personal property may be converted into cash, but only in a sufficient amount to pay the above bequests.

Item II (e) devises all the testator's real estate to Julius Berger, "my beloved nephew." At the time of the testator's death, he owned no real estate.

Item II (f) bequeaths all accounts receivable, notes, bonds, and mortgages "and all other personal property, with the exception of and excluding any cash money remaining after paying debts and special bequests (a) throught [*sic.*] (d) above, to my beloved nephew Julius Berger."

Item II (g) reads:

"All the rest, residue and remainder of my estate, both real and personal of every nature, and wherever situated, of which I may die seized or possessed, including, without limitation all property acquired by me or to which I may become entitled after the execution of this will, and all property herein attempted to be disposed of, the disposition of which by reason of lapse or other causes shall fail to take effect, I give and devise and bequeath in the following manner and fashion:"

There follow bequests to seven charitable or religious institutions, each in the form of a percentage of the residue. To illustrate, the first of these reads:

"1: Twenty percent of the residue (20%) to the Jewish Community Fund * * *."

Each bequest includes the phrase "of the residue," immediately after the designated percentage. Five of the seven contain a provision for memorializing the testator, including the establishment of a memorial fund, the erection of a memorial placque, the planting of trees in Israel, and the observance of the "anniversary date" of his death.

In the next and last paragraph of his will, the testator appoints as executors his "beloved nephew, Julius Berger," and his "dear friend and attorney Leland S. Freedman."

A brief summary of the inventory and appraisal may be helpful to an understanding of the issues.

| | |
|---|---|
| Household furniture and fixtures, jewelry, and automobile: | $ 500.00 |
| Bank deposits and money, including cash on hand, checking and savings accounts, and certificates of deposit: | 210,208.09 |

The parties agree that the terms "cash" and "cash money," used in the will, were intended to cover the certificates of deposit as well as the cash on hand and bank accounts. Accordingly, no decision is rendered on this point. Continuing the summary:

| | |
|---|---|
| Corporate stocks: | $ 28,841.00 |
| Bonds: | 76,500.00 |
| Accounts and debts receivable: | 84,928.40 |

The appraised value of the whole estate is $400,977.49.

Although certain specific questions are asked in the pleadings, the case boils down to two main issues:

1. What part or parts of the estate must bear the burden of paying costs and expenses of administration, federal and Ohio estate taxes, federal income taxes, Ohio income taxes (if any), and Ohio personal property taxes?

2. Who is entitled to post-death income from estate assets prior to distribution?

The charities concede that the will directs that the testator's "just debts" and funeral expenses, plus the $55,005 in pecuniary bequests, be paid out of the "cash" or "cash

money," as defined above. The cash is more than sufficient to meet these obligations.

The will makes no express provision for the payment of costs and expenses of administration or estate and other taxes, but the parties agree that the primary burden for the payment of such obligations falls upon the residuary estate. However, they disagree as to what constitutes the residue.

The individual beneficiaries (hereinafter referred to as the "Bergers") contend that Item II (g) ("All the rest, residue and remainder of my estate * * *") is the residuary clause. On the other hand, the charities claim that Item II (e), devising all of the testator's real estate, is a residuary devise; and that the words in Item II (f), "and all other personal property, with the exception of and excluding any cash money remaining after paying debts and special bequests (a) throught [sic.] (d) above," constitute a residuary bequest. Hence, they argue that by paragraphs (e) and (f) Julius Berger is the beneficiary of all the testator's real and personal property excepting only the cash money.

The charities urge us not to depend too much upon labels in classifying legacies as specific, general, demonstrative, and residuary, but first to ascertain the testator's intention from the entire will and then attach the label. They quote a lengthy passage to this effect from 6 Bowe-Parker, Page on Wills (1962), Section 48.1.

On the other hand, as pointed out in the Berger brief, the testator's intention "must be ascertained from the words used in the will by giving to such words their usual and ordinary meaning." *Findley* v. *Conneaut* (1945), 145 Ohio St. 480, 62 N. E. 2d 318, paragraph three of the syllabus.

A quotation from *Gridley* v. *Gridley* (1948), 399 Ill. 215, 77 N. E. 2d 146, at 150, is also enlightening. After conceding that in ascertaining the testator's intention the will as a whole must be considered, the court adds:

"* * * However, the intention which is to be sought for is not what may by inference be presumed to have been in

the mind of the testator, but that which is expressed by the language of the will. * * *"

What clearer words could be used to denote a general residuary clause than those in Item II (g) of Mr. Wulkan's will? Definitions of a general residuary clause seem almost superfluous, but I will nevertheless quote briefly from the same textbook cited by the charities.

"* * * A general residuary clause disposes of the residuum of all testator's property not otherwise disposed of, without regard to its nature * * *." 4 Bowe-Parker, Page on Wills (1961), Section 33.46.

"* * *

"* * * Any words which show an intention to dispose of all of testator's estate not otherwise disposed of, will serve as a residuary clause." *Id.*, Section 33.48, page 372.

The words "all the rest, residue, and remainder" of a testator's estate are the words "commonly employed in a residuary clause of a will to embrace every species of property not otherwise disposed of." 56 Ohio Jurisprudence 2d, Wills, Section 769. See, also, 4 Page on Wills, *supra*, Section 33.48, page 371.

Item II (g) of Mr. Wulkan's will contains the language customarily found in a general residuary clause. In addition, as already mentioned, the bequest to each of the seven charities includes the phrase "of the residue."

Furthermore, Item II (g) is the last dispositive provision of the will, which is the usual place for the general residuary clause. See 4 Page on Wills, *supra*, Section 33.47.

If Item II (g) was not intended to be the general residuary clause, and the residue was intended to be disposed of elsewhere, why was Item II (g) written into the will at all?

To uphold their contention that paragraphs (e) and (f) of Item II are really the residuary clauses, the charities rely, at least partially, on *Witteman* v. *Dunkle* (1969), 21 Ohio St. 2d 3, 254 N. E. 2d 345.

The *Witteman* case arose in connection with R. C. 2113.38. This section permits a surviving spouse to pur-

chase the family home if not "specifically devised." The devise in question was "all of my real property," and the court held that this was a general, not a specific devise, even though the testatrix owned only the one parcel of real estate.

However, the appellant-devisee contended that the statutory words, "specifically devised," should be construed to include every kind of devise other than a residuary devise. Under this theory, if the devise was a general, but not a residuary devise, the surviving husband would not be entitled to purchase the property. The court said that it was not necessary to consider the appellant's contention for the following reason:

"* * * If there is no devise of any real property by a testator except a devise of 'all of my real property,' as in this case, such devise is the substantial equivalent of and amounts to a residuary devise of the testator's real property." 21 Ohio St. 2d at page 8.

This holding was not carried into the syllabus.

It is apparent that the *Witteman* case differs materially from the instant case.

The *Witteman* case was not concerned with the question of which of two clauses was the residuary clause for the purpose of bearing the primary burden of the costs of administration, estate taxes, and the like. No clause similar to Item II (g) of Mr. Wulkan's will was before the *Witteman* court or played any part in its decision.

Furthermore, unlike the clause in Mrs. Witteman's will, Item II (f) of Mr. Wulkan's will, after making certain specific bequests, bequeaths "all other personal property, *with the exception of and excluding any cash money remaining after paying debts and special bequests * * *.*" (Emphasis added.) Item II (g), the general residuary clause, follows.

Despite the above-quoted exclusionary clause, the charities claim that Items II (e) and (f) are exactly like the provision in Mrs. Witteman's will and are, in fact, the residuary clauses. They argue that the exception of "cash money" is a rather awkward, but nonetheless effective way of stating that "cash money" is the sole omission from a

comprehensive gift to Julius Berger of the testator's entire estate. They argue, further, that the label "residue" is in no way descriptive of the gift to the charities, because that gift is restricted to the one asset, namely, "cash money." Hence, they continue, the bequest of "cash money" is, in truth, a specific bequest, which stands on an equal footing with the bequests in Item II (f) to Julius Berger, of "all accounts receivable, notes, bonds, and mortgages," conceded by the charities to be specific bequests.

Pursuant to the charities' theory, the primary burden for payment of costs of administration, estate taxes, and so forth, would fall upon the bequest to Julius Berger of "all other personal property" (except cash), as set forth in Item II (f). By referring to the inventory and appraisal, we find that this allegedly residuary bequest includes only the household furniture and fixtures, jewelry, automobile, and corporate stocks, of a total value of $29,341.

Inasmuch as the pecuniary legacies are given a preferred position by the will, as already explained, the secondary burden for costs of administration, estate taxes, and the like would, according to the charities, be borne *pro rata* by the allegedly specific bequest to the charities and the concededly specific bequests to Julius Berger.

On the other hand, if Item II (g) is the residuary clause and the bequest of cash money is residuary rather than specific, the costs of administration and taxes would be charged primarily against it.

I do not agree with the charities' position that because only one asset is undisposed of, it passes as a specific bequest. The very fact that it is not disposed of brings it within the accepted definition of a residuum. See 4 Page on Wills, *supra*, Section 33.46.

Nor do I see any difference between a will which leaves one or more assets undisposed of and a will which disposes of all the assets with the express exception of one or more, as in the present case.

On this latter point, the Berger brief contains the following quotation:

" 'The fact that testator has made a general disposition of all of his property of a certain kind with one specific

exception does not prevent such excepted property from passing as part of the residue.' 4 Bowe-Parker, *Page on Wills*, Sec. 33.48, p. 374 (1961).''

The charities complain that only one case is cited in support of this, and that the cited case is distinguishable from the instant case. Incidentally, they cite nothing *contra.*

The cited case is *Tyler* v. *Tallman* (1908), 29 R. I. 57, 68 A. 948. In that case the will directed the executor to sell all the testator's real property *with the exception of the Breck Building*. By the doctrine of equitable conversion, the real property thus sold became personal property. The will contained a specific bequest, several pecuniary bequests, and a general residuary clause, disposing of all the rest, residue, and remainder of the testator's estate. Inasmuch as the personal property was not sufficient to pay the pecuniary legacies in full, it became necessary to sell the residuary realty, if any, in order to obtain funds for their payment. The appellant, who was the residuary legatee, contended that the devise of the Breck Building was specific, not residuary. This is precisely the kind of claim made by the charities in the instant case with respect to the cash money. In neither case was there an express devise or bequest of the excepted property. The *Tyler* court held that there was no specific devise of the Breck Building, but that it became a part of the general residuary estate. The following language from the opinion is especially appropriate to the issue before us:

''* * * It would have been no more difficult for the testator to have made a specific devise, if he had so desired, than it was for him to make a specific bequest, as he did. * * *'' 68 A., at 950.

The charities claim that the *Tyler* case is distinguishable because the will did not include any clauses making a general disposition of all property of one kind, such as appear in paragraphs (e) and (f), Item II, of Mr. Wulkan's will. But, as noted above, the will in the *Tyler* case did dispose of all of the real property by sale, with the exception of one parcel, and the issue in each case is whether the excepted property passes as a specific devise or as a

residuary devise. At the very least, I think the two cases are analogous on the point at issue.

In any event, we have no right to assume that Mr. Wulkan intended to make a specific bequest of the cash money when there is not the slightest manifestation of such an intention in the will. To hold that the cash money, which is nowhere expressly bequeathed, becomes a specific rather than a residuary bequst, would violate one of the basic principles of will construction. As observed by the court in *Findley* v. *Conneaut, supra* (145 Ohio St. 480), at page 486:

"* * * It is not the function or the province of a court to make a new and different will for a testator under the guise of construing the will made by him."

I hold that there is no specific bequest of the cash money remaining after payment of the debts, funeral expenses, and pecuniary legacies, and that such cash money is included in the residuum.

The fact that the bequests to the charities are fractional and that some of them contain directions for memorializing the testator does not prevent them from being residuary bequests, as contended by the charities, nor does it indicate an intention that the bequest of cash money shall be specific. Such provisions are common in residuary bequests to charitable institutions.

The charities also argue that in a general, nontechnical sense, the testator could not have intended the costs of administration and taxes to be charged against the charities, because to do so would result in an enormous difference between the amount received by them and the amount received by Julius Berger. Their reply brief contains charts to prove their point.

They also state that claims totaling $70,398, have been filed against the estate by Dr. and Mrs. Earl Berger and Mr. Joseph Mazarow. Their figures show that if these claims are allowed and the charities must bear the whole burden of costs of administration and taxes, they will re-receive nothing from the estate.

Admittedly, however, in construing the will, the matter of these claims is irrelevant. Also, the fact that Julius

Berger will receive much more than will the charities is of no legal significance. Residuary estates often turn out to be far less valuable than anticipated.

There remains the question of who is entitled to income received by the executors since the testator's death and before distribution of the particular asset.

The charities concede that interest received on all accounts receivable, notes, bonds, and mortgages go to Julius Berger, inasmuch as these are specific bequests.

As already seen, the only income-producing items within the gift to Julius Berger of "all other personal property" are the stocks. The Berger brief contends that the post-death dividends go to Julius Berger. This depends upon whether the bequest is specific or general. If the latter, they become part of the residue. *Hood* v. *Garrett* (1936), 53 Ohio App. 464, 5 N. E. 2d 937, 22 Ohio Law Abs. 694. The bequest of "all other personal property" is general. *McArther* v. *McArther* (1961), 93 Ohio Law Abs. 367, 378; Annotation, 88 A. L. R. 553, 554; 6 Page on Wills, *supra*, Section 59.18; 56 Ohio Jurisprudence 2d, Wills, Section 778.

Inasmuch as the "cash money" has been determined to be residue, interest on the bank accounts and certificates of deposit becomes part of the residuary estate, namely, Item II (g).

### Conclusions of Law

1. There is no specific bequest of the cash money remaining after paying debts and special bequests (a) through (d) in Item II; and such cash money, previously defined, becomes a part of the general residuary estate, Item II (g).

2. Costs and expenses of administration, federal and Ohio State taxes, federal and Ohio income taxes (if any), and Ohio personal property taxes, are chargeable primarily against the general residuary estate, Item II (g).

3. If the general residuary estate is not large enough to pay the above obligations, the amount still due is chargeable secondarily against the general bequest of "all other personal property," contained in Item II (f).

4. If the above obligations are still not satisfied, the balance due is chargeable against the specific bequests in Item II (f).

5. Income received by the executors since the testator's death and before distribution of a particular asset shall be distributed in accordance with the paragraphs immediately preceding these conclusions of law.

6. The matter of amount and source of payment of attorneys' fees is reserved for decision by the presiding judge.

IN THE MATTER OF THE APPEAL OF DRAIN FROM ORDER OF STATE PERSONNEL BOARD OF REVIEW AFFIRMING ORDER REMOVING HIM FROM HIS EMPLOYMENT WITH THE OHIO DEPT. OF LIQUOR CONTROL.*