ESTATE OF HENRY L. TESSMER, DECEASED, MINNIE TESSMER, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Tessmer v. Commissioner
Docket No. 14714-92
United States Tax Court
T.C. Memo 1994-401; 1994 Tax Ct. Memo LEXIS 414; 68 T.C.M. (CCH) 440; August 18, 1994, Filed *414 Decision will be entered under Rule 155. For petitioner: James W. Childs. For respondent: Susan T. Mosley. RUWE
RUWE
MEMORANDUM OPINION RUWE, Judge: Respondent determined a deficiency in petitioner's estate tax in the amount of $ 683,248. The sole issue for decision is whether the amount petitioner claimed as a marital deduction pursuant to section 2056(a) [1] should be reduced by a proportionate share of the debts of the estate. The parties submitted this case fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition was filed, Minnie Tessmer, decedent's surviving spouse and executrix of petitioner, resided in Congress Lake, Hartville, Ohio. Henry L. Tessmer (Decedent) died testate on April 18, 1989. The pertinent portions of decedent's *415 "Last Will and Testament" are as follows: ITEM I: I direct that all my just debts and funeral expenses be paid out of my estate as soon as practicable after the time of my decease and that my estate bear all of the expenses of any inheritance and estate taxes on probated assets and non-probated assets. ITEM II: If my wife, MINNIE TESSMER, shall survive me, * * * I give, devise and bequeath unto my beloved wife, MINNIE TESSMER, one-third (1/3) of all my property, real, personal or mixed, which sum shall be in addition to any statutory set-off or other allowances to a surviving spouse, to be hers absolutely. In the event that my wife, MINNIE TESSMER, shall predecease me, all such property shall become a part of the residue of my estate. ITEM III: All the rest, residue and remainder of my estate, both real and personal, wheresoever situate and of whatever nature, kind and description that I may own at the time of my death, * * * I give, devise and bequeath as follows: Such residue shall be divided into seven (7) equal shares or parts and I give, devise and bequeath said shares, IN TRUST, to my children, to-wit: * * *
On Form 706, "United States Estate (and Generation-Skipping *416 Transfer) Tax Return", received by respondent on January 18, 1990, petitioner reported, inter alia: (1) Total gross estate of $ 9,198,347; [2] (2) total allowable deductions of $ 8,605,292, which included a $ 3,085,834 marital deduction; [3] (3) taxable estate of $ 593,055; and (4) after applying the "allowable unified credit" of $ 192,800, no estate taxes due. Petitioner did not reduce the gift to Ms. Tessmer by a proportionate share of the debts and expenses of the estate. The property distributed under "ITEM III" was sufficient to pay the debts and expenses of the estate. *417 Respondent reduced the marital deduction reported by petitioner by a proportionate share of the debts and expenses of the estate and determined a deficiency in petitioner's estate taxes. [4] *418 Petitioner concedes that the marital deduction should be reduced by administration expenses of $ 119,115. [5] In the notice of deficiency, respondent reduced the marital deduction by this proportionate share of the funeral and administration expenses of the estate. See supra note 4. Therefore, based on petitioner's concession, we sustain this portion of respondent's determination. The issue left to be resolved is whether the gift to Ms. Tessmer must also be proportionately reduced by the remaining debts of the estate of $ 5,400,343. Section 2056(a) allows a deduction from the gross estate for any interest in property which passes or has passed from the decedent to his surviving spouse. Section 2056(b)(4) provides: (4) Valuation of interest passing to surviving spouse. -- In determining for purposes of subsection (a) the value of any interest in property passing to the *419 surviving spouse for which a deduction is allowed by this section -- (A) there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest; and (B) where such interest or property is encumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined.
Section 20.2056(b)-4(a), Estate Tax Regs., provides that "the marital deduction may be taken only with respect to the net value of any deductible interest which passed from the decedent to his surviving spouse". Therefore, the net value of the gift received by the surviving spouse controls the amount of the marital deduction. United States v. Stapf, 375 U.S. 118, 125 (1963); Estate of Reid v. Commissioner, 90 T.C. 304, 307 (1988); Estate of Swallen v. Commissioner, T.C. Memo. 1993-149. *420 The net interest in property passing to the surviving spouse for purposes of the marital deduction is determined by State law. Riggs v. Del Drago, 317 U.S. 95, 101 (1942); Estate of Penney v. Commissioner, 504 F.2d 37, 40 (6th Cir. 1974), revg. and remanding 59 T.C. 102 (1972); Estate of Allen v. Commissioner, 101 T.C. 351, 357 (1993). The parties agree Ohio law controls herein. [6] Under Ohio law, "The court's sole purpose in an action seeking construction of a will is to ascertain and carryout the intention of the testator." Sandy v. Mouhot, 438 N.E.2d 117, 118 (Ohio 1982); see also Townsend's Executors v. Townsend, 25 Ohio St. 477 (1874). The intent of the testator is determined from the words contained in the will. Stevens v. National City Bank, 544 N.E.2d 612, 615-616 (Ohio 1989); Townsend's Executors v. Townsend, supra ("The words contained in the will, if technical, must be taken in their technical sense, and if not technical, *421 in their ordinary sense, unless it appear from the context that they were used by the testator in some secondary sense."). [7]
*422 Petitioner argues that the gift to Ms. Tessmer was a general gift and that under Ohio law, a general gift is reduced by debts and expenses of the estate only after the residuary share has been exhausted. Respondent argues (1) that the gift to Ms. Tessmer was a residuary gift and must be reduced proportionately by the debts and expenses of the estate, or (2) alternatively, under Ohio law, the debts and expenses of the estate reduce general and residuary gifts proportionately. The first matter for decision is whether decedent intended the gift to Ms. Tessmer to be part of the residuary share. A general gift is one that can be satisfied out of the general assets of the estate. In re Mellott's Estate, 121 N.E.2d 7 (Ohio 1954); In re Estate of Kirkwood, 216 N.E.2d 895 (Ohio Ct. App. 1966). We find that decedent intended the gift of "one-third (1/3) of * * * [his] property, real, personal or mixed" to Ms. Tessmer, as described under "ITEM II" of his Last Will and Testament, to be a general gift. See In re Estate of Witteman, 239 N.E.2d 107 (Ohio Ct. App. 1968) ("All of my real property, of *423 every kind and description" was a general gift); Berger v. Berger, 304 N.E.2d 265, 272 (Ohio P. Ct. 1973) ("all other personal property" was a general gift). It is clear that decedent intended "ITEM III" of his Last Will and Testament to be a residuary clause -- "All the rest, residue and remainder of my estate". See Berger v. Berger, supra at 269. Moreover, based on the words and structure of decedent's Last Will and Testament, we find that decedent did not intend the gift to Ms. Tessmer as described in "ITEM II" to fall under the residuary clause. For example, the last sentence of "ITEM II" provides that "In the event that my wife, MINNIE TESSMER, shall predecease me, all such property shall become a part of the residue of my estate." Based on the foregoing, we find that the gift to Ms. Tessmer was a general gift, and not part of the residuary. We must now determine whether under Ohio law petitioner's debts must first be paid from the residuary, or whether the debts must be paid from, and thus reduce, both the general and residuary gifts proportionately. Petitioner contends that under Ohio law, debts of the *424 estate do not reduce a general gift until the residuary share is exhausted. We agree with petitioner. In Y.M.C.A. v. Davis, 140 N.E. 114 (Ohio 1922), affd. 264 U.S. 47 (1924), the Ohio Supreme Court, in the "Syllabus by the Court", [8] stated: A residuary devisee or legatee is presumed in law to be in the position of the last lienholder, after all prior lawful claims and charges have been satisfied out of the estate.
The Ohio Supreme Court explained that: In the distribution of property agreeably to the will it is elementary, of course, that the testator may, in a large measure, determine the priority in which his several bounties may be distributed, and in so doing it is to be presumed that a legacy, specific as to the person, thing, or amount, shall have priority over a mere general provision, especially, from its very nature, over all residuary devises and legacies. It would be a strange legal paradox, indeed, to hold residuary devises, legacies, or bounties prior to those that are express and specific. The plaintiff's in error are designated for the first time in item 10, after all specific devises and legacies *425 have been provided for, in the following language: "All the rest, residue and remainder of my estate and property, real, personal and mixed, of every nature and description, or wheresoever situate * * * I give, devise and bequeath to the Young Men's Christian Association," etc.
This fact affords a clear and conclusive presumption that all charges imposed by the law or by the testator should be paid out of the estate before any rights should ripen in behalf of the residuary devisees or legatees under this item. * * * [Y.M.C.A. v. Davis, supra at 115.]
Even though Y.M.C.A. v. Davis, supra, involved the payment of Federal estate taxes, the above language applies to the payment of debts and expenses generally. This is illustrated by the following statement: The single question in this case is whether the executor, who has paid the federal tax from the general assets of the estate in his hands, shall collect the amount of that tax from the specific devisees and legatees in the respective portions of their several devises and bequests, or shall deduct it, together with other charges, debts, and costs *426 of administration, from the total assets, in finding the "rest, residue, and remainder" of the estate bequeathed to the residuary legatees. [Y.M.C.A. v. Davis, supra at 115; emphasis added.]
Petitioner relies primarily on In re Dickey's Estate, 94 N.E.2d 223, 224 (Ohio Ct. App. 1949). In Dickey's Estate, the testator in his will left numerous specific and general legacies and a specific devise of real estate, and the will contained a residuary clause. Id. The issue in Dickey's Estate was whether the Probate Court properly charged, solely to the residuary share, the payment of attorney's fees and other expenses incurred in the successful defense by the executor of a will contest suit, or whether the fees and expenses should have been apportioned equitably among the several legatees and devisees. In relying on Y.M.C.A. v. Davis, supra, the Ohio Court of Appeals outlined the *427 general rule regarding the payment of administration expenses of an estate as follows: In the absence of a contrary intention expressed in the will the general rule is that all expenses of administration are chargeable against the estate and that when the estate is being administered under a will wherein specific or general legacies or specific devises are given and a residuary estate is created, the expense of administration falls on the residuary estate, exempting the specific legacies or devises. * * * [In re Dickey's Estate, supra at 226 (citing Y.M.C.A. v. Davis, supra; 69 C.J., Wills, sec. 2571 (1934)).]
In Dickey's Estate, the appellant conceded that residuary legatees bear the burden of "ordinary expenses of administration of the estate". In re Dickey's Estate, supra at 226. Nevertheless, the appellant argued that the attorney's fees and other expenses incident to the defense of the contest suit were "extraordinary expenses", and as such, should be apportioned equitably among the several legatees and devisees. The Ohio Court of Appeals disagreed, concluding as follows: In our opinion the beneficiaries *428 under the will of Arthur C. Dickey to whom were given a specific or general legacy, or a specific devise of real estate, had a legal right to receive such property exempt from the burden of the cost of administration, since there was a residuary estate out of which the costs of administration could be paid. [Id. at 228].
Similarly, in Berger v. Berger, 304 N.E.2d at 268, the parties agreed that while the will made no express provision for the "payment of costs and expenses of administration or estate and other taxes, * * * the primary burden for the payment of such obligations falls upon the residuary estate." In its "Conclusions of Law" the court provided: Costs and expenses of administration, federal and Ohio State taxes, federal and Ohio income taxes (if any), and Ohio personal property taxes, are chargeable primarily against the general residuary estate * * * If the general residuary estate is not large enough to pay the above obligations, the amount still due is chargeable secondarily against the general bequest of "all other personal property," * * * [Id. at 272.]
In In re Estate of Coleman, 564 N.E.2d 116 (Ohio Ct. App. 1988), *429 the Ohio Court of Appeals, in the syllabus, stated that "Administrative expenses, including attorney fees, are not to be assessed pro rata against each beneficiary's share of the estate." In the opinion portion of Estate of Coleman, the Ohio Court of Appeals stated: Such attorney fees are to be treated as an expense of administration of the estate. They are generally paid entirely out of the residuary estate after all general and special legacies have been distributed, if there are sufficient funds, even though an heir which benefitted from the attorney's services does not thereby contribute to the payment of the attorney fees. * * * [Id. at 117 (citing In re Estate of Dickey, supra).]
The Probate Court in Shively v. Perrine, 67 N.E.2d 32, 37 (Ohio P. Ct. 1946), also relied on Y.M.C.A. The issue in Shively was whether a specific devisee of land encumbered by a mortgage was to receive the land free of the mortgage, leaving the residue liable for the debt. Id. at 33. The Probate Court concluded that the obligation fell on the residuum. Id. at 38-39. *430 In addition to quoting at length the language of Y.M.C.A., the Probate Court also provided the following statements regarding the residuum of an estate: According to Page on Wills, * * * "The residuum of an estate is that part of it left after paying the debts of testator and the expenses of administration and undisposed of by the rest of the will." [Id. at 36.] By the term "residue" is meant the balance left after the payment of all debts of the estate and the payment of all specific, demonstrative and general legacies. It means everything not otherwise disposed of. A residuary clause is the clause in a will by which that part of the property is disposed of which remains after satisfying previous bequests and devises. * * * [Id. at 36-37.] "A residuary legatee is entitled only to what remains after all the debts of an estate are paid." [Id. at 37 (quoting Kuerze v. Western German Bank, 12 Ohio App. 412, 421 (1919)).] "Property constituting the residuum of the testator's estate and disposed of by the residuary clause in his will is to be applied *431 in payment of his debts before any of the property otherwise disposed of in the absence of any testamentary provisions to the contrary. * * *" [Id. (quoting 69 C.J., Wills, sec. 2571 (1934)). [9]]
In addition to the above cases, Page on Wills, provides the following: If there is a residuary clause and if testator's estate is insufficient to satisfy the specific, demonstrative, and general legacies, and leave anything for the residuary legacies (after paying testator's debts, where such debts exist), the legacies which are given in the residuary clause abate first, unless the will, when read in connection with the surrounding circumstances shows a contrary intention; and no payment can safely be made under a residuary clause until all the other classes of legacies have been paid in full. The reason underlying this rule is that, *432 as testator bequeaths in a residuary clause only that part of his property left after the payment of the bequests and devises previously given, his intention will be best given effect by using the residuum first in paying testator's debts. * * * [6 Bowe & Parker, Page on the Law of Wills, sec. 53.5 (3d ed. 1962); emphasis added; fn. refs. omitted (citing Y.M.C.A. v. Davis, supra).]
Respondent attempts to minimize the importance of Dickey's Estate and argues that Y.M.C.A. is distinguishable from the facts herein since "the will at issue [in Y.M.C.A.] contained numerous specific bequests and a residuary clause, but apparently no general bequests. Thus, the rights of general devisees and legatees could not have been at issue." We do not agree with respondent's narrow reading of Y.M.C.A. We find that the controlling point of law, as provided in the syllabus, that the residuary is the "last lienholder, after all prior lawful claims and charges have been satisfied out of the estate", coupled with the remainder of the Ohio Supreme Court's opinion in Y.M.C.A., stands for the proposition that under Ohio law, debts and expenses *433 of the estate first reduce the residuary share, leaving a general gift secondarily liable. Moreover, we find that Dickey's Estate, and the other cases cited above, stand for the same proposition. Respondent argues that we should follow the analysis in In re Estate of Guthrie, 29 Ohio N.P. (n.s.) 357 (Ohio P. Ct. 1931). In Estate of Guthrie, the decedent gifted "one-fourth of all her property" to her surviving husband. The husband argued that "the residue of an estate is always chargeable with the debts and costs and expenses of administration, and since there was a residuary clause in this Will, the costs and debts should be charged against the residue." Id. at 357-358. The Probate Court held that the gift to the husband "was not such a specific bequest as to make the residue liable for the debts and costs of administration." Id. at 358. While Estate of Guthrie, a Probate Court decision, supports respondent's contention, we have already found that Y.M.C.A. v. Davis, supra, an Ohio Supreme Court decision, stands for the proposition that the *434 residue should be exhausted by the debts and expenses of an estate before specific or general gifts -- "A residuary devisee or legatee is presumed in law to be in the position of the last lienholder, after all prior lawful claims and charges have been satisfied out of the estate." Y.M.C.A. v. Davis, 140 N.E. at 114. Based on Y.M.C.A. v. Davis, and on the cases discussed above, we do not believe the Supreme Court of Ohio would follow Estate of Guthrie. Accordingly, we decline to follow Estate of Guthrie. See Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967). Respondent for the first time on reply brief contends that Estate of Street v. Commissioner, 974 F.2d 723 (6th Cir. 1992), revg. T.C. Memo. 1988-553, requires a finding that the gift to Ms. Tessmer be proportionately reduced by the debts of the estate of $ 5,400,343. [10] Here, venue for appeal lies to the Court of Appeals for the Sixth Circuit. In Golsen v. Commissioner, we stated that we will "follow a Court of Appeals decision which is squarely in point where appeal from our decision *435 lies to that Court of Appeals and to that court alone." 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971) (fn. ref. omitted). In our view, however, the facts and applicable State law supporting the Court of Appeals' decision in Estate of Street are distinguishable from the facts and controlling State law presented here. In Estate of Street v. Commissioner, T.C. Memo. 1988-553, this Court held that a marital deduction (comprising a single marital trust of the entire residue) is not reduced by administrative expenses that were charged, under State law, against the income of *436 the estate and not the principal. In Estate of Street v. Commissioner, 974 F.2d at 727, the Court of Appeals for the Sixth Circuit disagreed and held that "the payment of administrative expenses from income [of an estate] must operate to reduce the size of the marital deduction, otherwise the spouse would receive a deduction which exceeded the amount which was actually in the estate, and available for distribution." We recently distinguished Estate of Street in Estate of Allen v. Commissioner, 101 T.C. 351 (1993). In Estate of Allen, we stated: "Initially, we note that the fact that the administration expenses were deducted for income tax purposes does not, in and of itself, necessitate a reduced marital deduction." Id. at 357. In Estate of Allen, we distinguished Estate of Street on the following grounds: (1) In Estate of Allen, the residue was divided into two shares, a marital and nonmarital share, whereas in Estate of Street v. Commissioner, supra, the marital trust comprised the entire residue; and (2) in Estate of Allen v. Commissioner, supra, *437 under the will and Oklahoma law, the amount of death taxes and administrative expenses was to be charged to the nonmarital share, not the marital share. Id. at 358. The facts before us provide similar grounds for distinguishing Estate of Street v. Commissioner, supra: (1) Decedent's Last Will and Testament divided the property of the estate into two shares: a marital share (a general gift) as described in "ITEM II", and a nonmarital share (a residuary gift) as described in "ITEM III"; and (2) under Ohio law, the debts of the estate are first charged to the residuary gift, the nonmarital share. [11]
Based on the foregoing, and since the assets in the residuary share were sufficient to pay the debts of the estate, we hold that the property interest passing to Ms. Tessmer, which qualifies for the marital deduction allowable under section 2056(a), should not be reduced by the debts of *438 the estate. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The "total gross estate" was comprised of the following items: ↩
Real estate
$   452,800
Stocks and bonds
8,685,533
Insurance
255
Jointly owned property
22,077
Other miscellaneous property
37,682
Total
$ 9,198,347
3. The "total allowable deductions" reported by petitioner of $ 8,605,292 is comprised of the following items: ↩
Marital deduction
$ 3,085,834
Funeral and administrative expenses
119,115
Debts, mortgages and liens
5,400,343
Total
$ 8,605,292
4. Respondent computed the marital deduction allowed in the notice of deficiency as follows: ↩
Gross estate
$ 9,198,347
Less: Debts and expenses
$ 5,519,458
Jointly held property
22,077
5,541,535
Net probate estate
3,656,812
One-third of net probate estate
1,218,937
Add: Jointly held property
22,077
Year's allowance
5,000
27,077
Total marital bequest
$ 1,246,014
Corrected marital deduction
$ 1,246,014
5. This concession appears to be based on Estate of Street v. Commissioner, 974 F.2d 723 (6th Cir. 1992), affg. in part, revg. in part T.C. Memo. 1988-553, although petitioner argues that Estate of Street↩ would not apply to this case. In the stipulation of facts, petitioner "concedes that the marital deduction should be reduced by administrative expenses totaling $ 119,115.00." On brief, petitioner concedes that costs of administration of $ 109,000 should reduce the marital deduction. There is no explanation for this discrepancy. We find, based on the stipulation of facts, that petitioner has conceded that funeral and administration expenses of $ 119,115 should reduce the marital deduction.
6. In Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967), the Supreme Court stated that when an underlying substantive rule involves State law, the State's highest court is the best authority on its own law. If there be no decision by that court then federal authorities must apply what they find to be the state law after giving "proper regard" to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. [Citations omitted.]↩
7. This quotation comes from the syllabus of Townsend's Executors v. Townsend, 25 Ohio St. 477 (1874). "The syllabus of a [Ohio] Supreme Court opinion states the controlling point or points of law decided in and necessarily from the facts of the specific case before the Court for adjudication." Ohio Sup. Ct. R. for the Reporting of Opinions 1(B); see also In re Estate of Penney v. Commissioner, 504 F.2d 37, 42 (6th Cir. 1974), revg. and remanding 59 T.C. 102 (1972) (citing Cassidy v. Glossip, 231 N.E.2d 64↩ (Ohio 1967)).
8. See supra↩ note 6.
9. 69 C.J., Wills, sec. 2571 (1934), was also cited by the Ohio Court of Appeals in In re Dickey's Estate, 94 N.E.2d 223, 224 (Ohio Ct. App. 1949↩).
10. We recently reevaluated our decision in Estate of Street v. Commissioner, T.C. Memo. 1988-553. In Estate of Hubert v. Commissioner, 101 T.C. 314 (1993), we concluded, in a Court-reviewed opinion, that we would adhere to the position we took in Estate of Street v. Commissioner↩.
11. In Estate of Street v. Commissioner, supra↩, the applicable State law was Tennessee.